CHARLES F. GREY AND JOSEPHINE C. GREY (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90320. Promulgated January 31, 1940.

*Hugh N. Smith, Esq.,* for the petitioner.
*G. W. Brooks, Esq.,* for the respondent.

## OPINION.

MELLOTT: The Commissioner determined a deficiency in the income tax of petitioners for the year 1934 in the amount of $2,049.05. Inasmuch as all controversies concern the income of Charles F. Grey, he will hereinafter be referred to as the petitioner.

The issue raised in the petition was whether or not the Commissioner erred in disallowing the deduction of $10,331.98 as a bad debt. That issue has now been settled by a stipulation of the parties that the petitioner should be allowed a deduction of $9,056.98.

By an amended answer the respondent asks that the Board "redetermine the correct amount of the deficiency in respect of the petitioners' income tax liability for the year 1934 to be not less than $439.55." In that connection he avers that in determining the revised net income shown in the statement attached to his notice of deficiency he understated income from fiduciaries by $1.36, dividends, and other income by $1,361.68. He accordingly asks that these amounts be included in petitioner's income.

All of the facts are found to be as stipulated. We shall set out herein only those necessary for an understanding of the issues to be decided.

Charles F. Grey died testate in Cook County, Illinois, on May 10, 1925. In his will he named his grandsons, petitioner herein, and Newton Fox Grey, executors of said will, and trustees of the trust created in paragraph twenty-three. By this paragraph he gave his residuary estate to his trustees, in trust, to invest and reinvest the same, to pay all costs and expenses, and to pay the net income for twenty years as follows:

\* \* \* one sixth of said net income to my wife, Anna L. Grey; one sixth of said net income to my son, Howard G. Grey, and his wife, Lizzie T. Grey, or the survivor of them, and in case of the death of both of them during said period of twenty years, then their share of said net income shall be paid in equal parts to their lawful issue; one-sixth of said net income to my daughter, Ethel Grey Scott, and her husband, Robert L. Scott, or the survivor of them and in case of the death of both of them during said period of twenty years, then their share of said net income shall be paid in equal parts to their lawful issue. In case my wife, Anna L. Grey, shall not survive me, or in case she shall survive me but shall die during said period of twenty years, then in either of said events, the one-sixth of said net income hereinabove bequeathed to my said wife shall be added to and made a part of the portions of said net income hereinabove bequeathed to my said son and his wife and to my said daughter and her husband, one-half thereof to my son and his wife, and one-half thereof to my daughter and her husband. The remaining one-half of said net income from said trust estate shall be set aside by my Trustees as a special fund for the following purposes; Out of said special fund I direct my Trustees to pay to James Spencer Dickerson (or in the event of his death, to his successor, to be named by Howard G. Grey and Robert L. Scott) the sum of Five Hundred

Dollars Semi-annually for ten years from the time of my decease, to be distributed by said James Spencer Dickerson in his discretion, among the wives or widows of clergymen who are, or at the time of their death were, residents of the United States, and not having an income above Two Thousand Dollars per annum; I further direct my Trustees to pay out of said special fund such sums as they may deem advisable, with the approval of said Howard G. Grey and Lizzie T. Grey, his wife, and Robert L. Scott and Ethel Grey Scott, his wife, or the survivors or survivor of them, for (1) the relief of persons of good character in needy circumstances, especially such as are loath to make their needs known or to solicit help from others; for (2) the assistance of young men and women who desire a collegiate education but have insufficient means to obtain it; for (3) the purpose of assisting worthy college students with transportation from their colleges to their homes and return during vacation periods. I direct my said Trustees to set aside out of said special fund sufficient money or property to enable them, in their judgment, to carry out the foregoing objects, and then to pay the remainder of said special fund annually for the period of twenty years from my death, (subject however, to the right of my said Trustees to discontinue such payments to any one or more of the beneficiaries and to substitute other beneficiaries in the place of those specifically named, as hereinafter provided) in the following proportions, to the following named institutions: [Then follows a list of eleven institutions, each of which is to receive fractional interests of 4/27ths, 2/27ths or 1/27th "of the remainder of said special fund."]

It is not my intention that the payments to be made by my Trustees out of the remainder of said special fund to the several institutions as set forth on pages eight and nine hereof shall be absolute and irrevocable gifts to such institutions, since it is possible that at a later time some of the said institutions may cease to exist or may be managed or operated in a manner that would not meet with my approval, if living. I therefore hereby give my said Trustees full power and authority to discontinue such payments to any one or more of the above named institutions at any time or times as they may deem advisable, and to substitute in lieu of any of the above-named institutions such other charitable institution or institutions as they may select as beneficiary or beneficiaries, provided, however, that before my said Trustees shall discontinue any such payments or shall substitute any other charitable institution or institutions for and in place of any of said beneficiaries, they shall first obtain the written approval of such act or acts by said Howard G. Grey and Robert L. Scott, or the survivor of them, if they, or either of them, be then living. In case any such payments shall be discontinued by my said Trustees at any time, as above provided, it shall be obligatory upon them to select some substitute charitable institution or institutions to receive the payments so discontinued, as I desire that all of the remainder of said special fund to be distributed to charitable institutions, and that no part of said special fund be allowed to accumulate as a part of the principal of said trust estate.

The testator further provided in subparagraph (e) of paragraph 23 of the will, with respect to the said trust, as follows:

(e) At the expiration of twenty years from the date of my death, I direct my said Trustees to divide and distribute the said trust estate in the following manner: One-fourth of said trust estate to my son, Howard G. Grey, and Lizzie T. Grey, his wife, or the survivor of them, but if neither of them shall then be living, then said one-fourth of said trust estate shall go to the children of said Howard G. Grey, in equal parts, the issue of any deceased child to have the

parent's share; one-fourth of said trust estate to my daughter, Ethel Grey Scott, and Robert L. Scott, her husband, or the survivor of them, but if neither of them shall then be living, then said one-fourth of said trust estate shall go to the children of said Robert L. Scott and Ethel Grey Scott, in equal parts, the issue of any deceased child to have the parent's share; and the remaining one-half of said trust estate shall be divided and distributed in the following manner, subject, however, to such change or changes of legatees as may be made by my Trustees, as hereinafter provided: [Then follows the same eleven institutions named in the will, each of which is to receive 4/27ths, 2/27ths or 1/27th "of one-half of said trust estate."]

The foregoing eleven institutions last above named are the same as the eleven institutions named as beneficiaries of the remainder of a certain special fund on page 4 of this instrument, and I hereby direct that in case any change or substitution of beneficiaries of the remainder of said special fund be made by my Trustees, then in the final distribution of said trust estate my Trustees shall make the same change or substitution with respect to those institutions which are to take the said remaining one-half of said trust estate; that is to say, at the time of the final distribution of said trust estate the institutions which shall take the said remaining one-half share of said trust estate shall be the same, and shall take in the same proportions as the beneficiaries of the said remainder of said special fund named on pages eight and nine hereof, but subject to all changes and substitutions of beneficiaries as shall have been made by my Trustees as aforesaid up to the time of the final distribution of said trust estate.

During the taxable year 1934, the testator's widow, Anna L. Grey, his son, Howard G. Grey, and his son's wife, Lizzie T. Grey, were dead. The petitioner, Charles F. Grey, therefore had $3/_{72}$ ($1/_6$ of ($1/_6+1/_{12}$)) or a $4\frac{1}{6}$ percent interest in the income, as one of the six surviving children of Howard and Lizzie Grey.

For the taxable year 1934 the trustees filed a fiduciary return (Form 1041) of income, showing a net loss of $29,411.25. In this return they claimed a deduction of $26,744.64 for depreciation of trust property, and a deduction of $39,453.18 for contributions, detailed as follows:

| | |
|---|---:|
| Amount set aside for special charitable objects under paragraph 23 (e) page 8 of the Will | $6,000.00 |
| Y. M. C. A. of Evanston | 5,273.70 |
| Y. M. C. A. of Chicago | 5,273.70 |
| Chicago Orphan Asylum | 5,273.70 |
| Evanston Hospital Association | 5,273.70 |
| Home for Destitute Crippled Children | 2,636.86 |
| Illinois Children's Home | 2,636.86 |
| Old·People's Home | 2,626.86 [sic] |
| Baptist Missionary Training School | 2,636.86 |
| Chicago Foundling's Home | 1,318.44 |
| Chicago Refuge for Girls | 1,318.44 |
| Florence Crittenden Anchorage | 1,318.44 |
| Total | 41,597.56 |
| Less: Distributed out of tax reserve—corpus | 2,144.38 |
| Net contributions | 39,453.18 |

The trust return also reported a capital loss of $39,352.14. The trust estate had income available for distribution of $80,396.79 but actually distributed $83,195.13, shown as follows:

| | |
|---|---:|
| Dividends | $17,143.50 |
| Other taxable income | 58,995.21 |
| Exempt interest | 3,663.08 |
| Nontaxable Liberty bond interest | 595.00 |
| | 80,396.79 |
| Distributed from corpus | 2,469.31 |
| Distributed from tax reserve | [1] 329.03 |
| | 83,195.13 |
| One-half | 41,597.75 |
| [1] Reserved for taxes | $2,144.38 |
| Less special improvement taxes paid | 1,815.35 |
| | 329.03 |

The trustees in their fiduciary return, reported distribution to taxable beneficiaries, as follows:

| | | |
|---|---:|---:|
| Total before depreciation | $41,597.57 | |
| Depreciation | | $26,744.64 |
| U. S. interest | | 595.00 |
| Exempt interest | | 3,663.08 |
| Dividends | | 8,125.54 |
| Corpus | | 2,469.31 |
| | | 41,597.57 |

There is no evidence showing how the exempt income was allocated on the books of the trust.

The Commissioner revised the depreciation deduction, downward, to $26,314.78, and in the notice of deficiency, increased dividend income by $35.82, representing the petitioner's 8⅓ percent interest in the adjustment of $429.86 for revised depreciation in the trust.

The parties have agreed that $26,314.78 is the correct allowance for depreciation; and for the purpose of this case, that the eleven institutions are devoted exclusively to one or more of the purposes specified in section 162 of the Revenue Act of 1934.

The respondent contends that the eleven charitable institutions are beneficiaries within the meaning of section 162 (b) of the Revenue Act of 1934, and that the amounts distributed to them are deductible under this section rather than under section 162 (a). The sections are set out in the margin.[1] He also contends that the allowable depreciation

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific,

upon the trust property and the tax-exempt income received by the trust should be allocated equally between the taxable and nontaxable beneficiaries.

The petitioner contends that the payments made to the eleven charitable institutions are allowable *in toto* and without limitation as a deduction by the trust under section 162 (a); that section 162 (b) is not applicable to contributions made by an estate or trust; and that the tax-exempt interest of a trust is not allocable to any beneficiaries other than taxable beneficiaries.

There is no dispute as to the gross income of the estate or its allowable deductions, with the exception of the proper method of treating depreciation and tax-exempt interest. The controversy may be thus depicted:

| | Petitioners | Respondent |
|---|---|---|
| 2. Interest | $4,604.38 | $4,604.38 |
| 3. Interest, 2% Tax Paid | 3,012.50 | 3,012.50 |
| 5. Rents | 63,433.48 | 63,433.48 |
| 6. Capital Gain | (39,314.64) | (39,314.64) |
| 7. Dividends | 17,143.50 | 17,143.50 |
| 8. Other Income | 261.72 | 261.72 |
| Total Gross Taxable Income | 49,140.94 | 49,140.94 |
| 11. Taxes Paid | 1,168.38 | 1,168.38 |
| 12. Depreciation (corrected) | 26,314.78 | 26,314.78 |
| 14. Contributions | 39,453.18 | |
| 15. Other Deductions | 11,185.99 | 11,185.99 |
| Total Deductions | 78,122.33 | 39,673.15 |
| Taxable Income | (28,981.39) | 9,467.79 |
| Retained by the Trust Estate | 37,536.79 | 39,314.64 |
| Total Taxable Distributable Income | 8,555.40 | 48,782.43 |
| Petitioners' share 8⅓% (a) | 712.95 | |
| Petitioners' share 4⅙% | | (b) 2,032.60 |

[The above schedule is taken from petitioner's brief. It does not accurately detail respondent's contention but that will hereinafter be shown.]

The Commissioner originally treated the petitioner as being entitled to receive 4⅙ percent of the total trust income, allowed him the benefit of 8⅓ percent of the exclusion for exempt interest and permitted him to deduct 8⅓ percent of the depreciation sustained on the trust prop-

literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit;

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

erty. He now contends that under the stipulated facts, the petitioner's proper distributive share of the trust income is as follows:

| | |
|---|---|
| Dividends, 4⅙ percent of $17,143.50 | $714.31 |
| Exempt Interest, 4⅙ percent of $3,663.08 | 152.63 |
| U. S. Interest, 4⅙ percent of $595.00 | 24.79 |
| Other income, 4⅙ percent of $58,995.21 | 2,458.13 |

From this, he says, should be deducted 4⅙ percent of the allowable depreciation of $26,314.78, or $1,096.45, and that his net taxable income should be recomputed as follows:

| | | |
|---|---|---|
| Other income | $2,458.13 | |
| Less depreciation | 1,096.45 | |
| | | $1,361.68 |
| Dividends | | 714.31 |
| Total | | 2,075.99 |

Stated simply, the first question is whether the portion of the gross income of the trust created by the grandfather of this petitioner, which was paid to organizations devoted exclusively to the purposes set out in section 162 (a), *supra*, should "be allowed as a deduction, * * * without limitation," as provided in said section, or should "be allowed as an additional deduction in computing the net income of" the trust as provided in section 162 (b), *supra*.

Respondent, in support of his contention that the deduction should be allowed under (b) rather than (a), refers to a general statement in "Restatement of the Law, Trusts (1935)" section 127, to the effect that: "A person is a beneficiary of a trust if the settlor manifests an intention to give him a beneficial interest * * *", and says that, inasmuch as the organizations come within the general classification of "income beneficiaries", the amounts paid to them "should be treated as amounts distributed currently to the beneficiaries." Petitioner contends that both sections can not be applied to the same distributions; that the distributions in question fall clearly within (a); and that (b) can not possibly be applied because it requires the amount so allowed as a deduction to be included in computing the net income of the beneficiaries and, for income tax purposes, such organizations have neither gross income nor net income as such terms are used in the revenue act.

Both parties cite, upon brief, *Continental Illinois Bank & Trust Co.* v. *United States*, 18 Fed. Supp. 229, in which the question lurked but was not directly decided. In that case the will creating the trust directed that the trustees should reserve and set aside a certain percentage of the annual income as a building fund and as a protection against the impairment of the trust estate by accident or otherwise. Upon termination of the trust one-half of the corpus was to go to a hospital and for certain charitable purposes. During the taxable

year the trustees credited to the reserve fund $44,000, one-half of which would inure to the benefit of the hospital. The Commissioner conceded that the $22,000 should have been allowed as a deduction under section 219 (b) (1) of the Revenue Act of 1926 which, in all essential particulars, is identical to section 162 (a), *supra.* At the trial, however, the Government contended that the Commissioner had made another error in his computation, which allowed a deduction of the entire amount of depreciation sustained on the trust property whereas he should have allowed only that part of the depreciation which was allocable to the income retained by the trust and sustained on property other than that held for the hospital. As to this contention the court said:

We do not feel that it is necessary to enter into a discussion of this offset as presented by the defendant. The section allowing the charitable deduction, section 219 (b) (1) of the Revenue Act of 1928, 44 Stat. 32, provides that the deduction shall be allowed "without limitation." If an adjustment is to be made which affects that allowance, it must be clearly shown that it does not do violence to that section which allows the deduction without limitation. Suffice it to say the Commissioner never made any determination on this point and it was first made in the trial of the case. The evidence produced is not sufficient to bear the burden which the defendant has of sustaining its contention by the preponderance of the evidence.

In *Estate of Edward T. Bedford,* 39 B. T. A. 1039 (appeal pending, C. C. A., 2d Cir.), we pointed out that subsection (a) of section 162, *supra,* was "entirely different in its purpose and effect from subsections (b) and (c) which follow"—a conclusion which is inescapable from a mere reading of the three sections. It may be added that it seems to be obvious that Congress had entirely different situations in mind in enacting them. In enacting (a) it intended to allow as deductions, without limitation, the amounts paid or permanently set aside for the prescribed—benevolent—purposes; but when it came to dealing with income "beneficiaries" generally, it had no such motive. It was merely being fair to the trust and the beneficiaries by making it definite and specific that tax should be paid but once.

Petitioner contends that respondent's present contention is at variance with what he refers to as the "administrative construction for the past 19 years." It is true that the instructions contained in the fiduciary returns prior to the year 1937 directed that there should be entered on line 14 of the return, under the heading "Contributions", that "part of the gross income which, pursuant to the terms of the will or deed creating the trust, was during the accounting period paid or permanently set aside for the use of" organizations exempt from tax. This instruction was superseded in 1937 and subsequent years by one directing that Schedule A (Income) be filled out "to include as shares of beneficiaries, amounts of charitable contributions,

which pursuant to the terms of the will or deed creating the trust are during the taxable year paid or permanently set aside as provided in Section 162 (a)." The change in the instructions does what the respondent is attempting to do in this proceeding—that is, consider all exempt organizations as "income beneficiaries" for the purpose of applying section 162 (b) which has the effect of denying a portion of the deduction specifically allowed to the trust under subsection (a). We are of the opinion that such a construction is unsound. We, therefore, decide this issue in favor of petitioner and hold that the payments made to the charitable institutions were properly deducted by petitioner from the gross income of the trust.

We come now to a consideration of the depreciation issue. The parties agree that the total allowable depreciation upon the property owned by the trust is $26,314.78. Petitioner contends that the entire amount is allocable to the taxable beneficiaries. Since the taxable beneficiaries receive one-half of the total income of the trust he contends that he is entitled to 8⅓ percent of the depreciation whereas respondent contends that he is entitled to only 4⅙ percent.

The applicable statute is section 23 (1) of the Revenue Act of 1934.[2] The italicized portion first appeared in the Revenue Act of 1928. Under prior acts it had been held that if there was no requirement in the trust instrument or the law of the state for setting up a depreciation reserve and the income was currently distributable to the beneficiary, he (the beneficiary) was not entitled to the deduction for depreciation. *United States* v. *Blow*, 77 Fed. (2d) 141. In such a case the deduction was allowable to the trustee; but it was useless to him since he had no income against which it could be applied. The sentence was added for the purpose of eliminating this unfairness.[3]

The use of the words "income beneficiaries" in this section is seized upon by the petitioner. He, in his argument upon this phase of the proceeding, would interpret the expression as if it were "*taxable* income beneficiaries." Respondent, on the other hand, claims to find in the expression used in this section some support for his theory that charitable organizations should be construed to be "income beneficiaries" in every sense of the word so as to allow the deduction under (b) instead of (a). This contention we have found to be unsound; but petitioner's present contention is equally unsound.

---

[2] (1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * * *In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.* [Italics supplied.]

[3] Hearings before Ways and Means Committee on Revenue Revision, 1927–1928, p. 476.

The hearings do not indicate that Congress was attempting to revise the whole theory and concept of taxing trusts and trust income, or in allowing depreciation upon trust property. It was conscious of an inequity which was resulting from the application of the existing law. It, therefore, undertook to remove this inequity by providing, in effect, for apportionment of the allowable deduction between the income beneficiaries and the trustee. But in removing this inequity it did not intend to create another at the expense of the revenue. Yet that, in effect, is what petitioner contends occurred. He would have us construe the statute to mean, not that there should be an equitable apportionment of depreciation between the beneficiaries and the trustee, but an inequitable one between those enjoying the bounty of the settlor. We do not believe that Congress ever intended any such result or expected that any construction of the language used would be made which would have that effect. This petitioner, in effect, says: "Even though I receive but 4⅙ percent of the income I desire to have allocated to me 8⅓ percent of the deduction for depreciation." While we have refused to classify charitable organizations as income beneficiaries for the purpose of limiting the deduction from gross income by section 162 (b), we feel that they should be so classified under the amendment of 1928 to section 23 (1). After all, the charitable organizations were collectively receiving 50 percent of the income of the trust. The theory of all the revenue acts is that the income of a trust "shall be computed in the same manner and on the same basis as in the case of an individual" except as otherwise provided in section 162. If, therefore, we take the general rule and apply the amendment of 1928, we compute the income of the trust in the same manner that we would compute the income of an individual, apportioning it between the income beneficiaries (both the taxable ones and the charitable organizations) and the trustee on the basis that the trust income is allocable to each. We, therefore, allow, under the stipulated facts, all of the depreciation to the income beneficiaries, which complies literally with the statute, and the fact that some of them are taxable and some are not is entirely beside the point.

Petitioner argues that the words "without limitation" appearing in section 162 (a) preclude us from doing what we have indicated we think should be done, but we do not so construe these words. When they are examined in their context it is obvious that they were used merely to direct that a trust, more than 15 percent of the income of which was used for the prescribed—charitable—purposes, should not be limited to "15 percentum of the taxpayer's net income" as provided in section 23 (o). The parenthetical clause of section 162 (a), we think, clearly justifies this conclusion. We, therefore, sustain the

respondent upon this issue and hold that petitioner is entitled to deduct only 4⅙ percent of the depreciation sustained upon the trust property.

The remaining question is whether the tax-exempt income is allocable between the taxable and nontaxable beneficiaries (the recipients of the contributions) as contended by the respondent or whether, as petitioner contends, all of it must be allocated to the taxable beneficiaries. Petitioner argues that inasmuch as contributions are deductible from gross income while tax-exempt interest is not to be included in gross income, if an allocation is made, the net result is the same as if a portion of the tax-exempt income be included in gross income or the deduction of a portion of the contributions be denied. The construction urged by the respondent seems to be the more reasonable. The trust instrument contains no direction that the exempt income be distributed only to the taxable beneficiaries and there is nothing in the stipulated facts to show even that the trustees attempted to make any allocation. All of the income of the trust was available for distribution and apparently was distributed.

The courts and this Board have approved proration of earnings, *Edwards* v. *Douglas*, 269 U. S. 204; *Mason* v. *Routzahn*, 275 U. S. 175; *Donahue* v. *United States*, 58 Fed. (2d) 463; *Peter W. Rouss*, 4 B. T. A. 516; affd., 30 Fed. (2d) 628; certiorari denied, 279 U. S. 853; *Harry A. Moody*, 9 B. T. A. 631; *Norwich Woolen Mills Corporation*, 18 B. T. A. 303; allocation of cost between two classes of stock, *Acme Manifolding Co.*, 24 B. T. A. 429; and proration of taxes, *Paso Robles Mercantile Co.*, 12 B. T. A. 750; affd., 33 Fed. (2d) 653; certiorari denied, 280 U. S. 595. In *Minnie L. Wolf*, 32 B. T. A. 959; affd., 84 Fed. (2d) 390, there was included in the gross income of a legatee so much of the interest distributed by the estate as was proportionate to the taxable income of the estate and the same method was followed in connection with the income of a trust in *J. Cornelius Rathborne*, 37 B. T. A. 607; affd., 103 Fed. (2d) 301.

Under the stipulated facts we hold that the Commissioner must be sustained in allocating the tax-exempt and taxable income between the taxable and nontaxable recipients of it.

*Judgment will be entered under Rule 50.*