TRUST UNDER AGREEMENT DATED DECEMBER 30, 1921, BY JOHN E. ANDRUS, DECEASED (TRUST NO. 1), CENTRAL HANOVER BANK AND TRUST COMPANY, HAMLIN F. ANDRUS AND WILLIAM H. TAYLOR, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7105.   Promulgated August 16, 1946.

*Benjamin Grund*, *C. P. A.*, and *M. L. Seidman*, *C. P. A.*, for the petitioners.

*Martin Lore, Esq.*, for the respondent.

## OPINION.

HARLAN, *Judge*: It is to be noted in this case that the respondent raises no question concerning the includibility of capital gains in the distributable income of this trust estate. Furthermore, respondent has not questioned the power of the trustee herein to "set aside" for the charitable beneficiary that portion of the "net income" which the trust instrument directs him to "pay" to the charitable beneficiary. In computing the deficiency here in question the respondent disallowed the claimed deduction on account of contributions to the Surdna Foun-

dation to the extent of $23,615.94. The explanation of this adjustment as set out in the deficiency notice is as follows:

(a) In view of the provisions of section 162 of the Internal Revenue Code as amended it is held that the deduction claimed for the portion of the gross income which during the taxable year was paid or permanently set aside for Surdna Foundation, a charitable institution, is not allowable to the extent of $23,615.94.

The petitioners contend that they paid or permanently set aside for the Surdna Foundation in 1941 $37,120.74 representing 45 per cent of the net income of the trust, $82,490.52, and that the amount so paid or permanently set aside is deductible in computing the taxable net income of the trust for the year 1941 under section 162 (a) of the Internal Revenue Code.[1]

The respondent contends that petitioners' deduction for the amounts paid or permanently set aside to a charitable corporation is limited to 45 per cent of the taxable income, i. e., the income after applying to the capital gains the percentages prescribed by section 117 of the Internal Revenue Code.[2]

In computing the deficiency the respondent treated the Surdna Foundation Inc., as a beneficiary of the trust and allocated the taxable net income as determined under section 117 between the charitable corporation and the trust in proportion to relative shares set out in the trust instrument. The respondent's method would take into account only 50 per cent of the long term capital gain from assets held for more than 24 months and 66⅔ per cent of the long term capital loss from assets held more than 18 months and less than 24 months, thus arriving at a net capital gain of $42,062.36 to be taken into account in computing net taxable income. Computed by this method, the net income prior to deduction for charitable contributions would be $39,607.74 and the amount deductible on account of charitable contributions would be $17,823.48.

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit; * * *

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

*       *       *       *       *       *

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 18 months;

66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;

50 per centum if the capital asset has been held for more than 24 months.

The respondent relies on *Charles F. Grey*, 41 B. T. A. 234; affd., 118 Fed. (2d) 153, as authority for the propriety of an allocation of tax-free income between the taxable and nontaxable beneficiaries. He argues that the treatment of the tax-exempt income in the *Grey* case is relevant here. A careful examination of the decisions in the *Grey* case, both of the Board of Tax Appeals and the affirming opinion of the Circuit Court of Appeals of the Seventh Circuit, leads to the conclusion that that case is not controlling here, since it differs from the instant case both as to the facts and the applicable statute. In the *Grey* case the taxpayer was a beneficiary of a trust, the income of which was distributable currently. The trust instrument provided that one-half of the net income should be paid to named beneficiaries and one-half paid or permanently set aside for certain charitable purposes.

Two questions arose. The first question was whether the amounts paid or permanently set aside for charitable purposes should be allowed as a deduction "without limitation" in computing the income of the trust under section 162 (a) or as an additional deduction in computing the net income of the trust under section 162 (b).[3]

As to this issue the Board of Tax Appeals properly held that the charitable organizations may not be classified as beneficiaries for the purpose of applying section 162 (b), which would have the effect of denying a portion of the deduction specifically allowed the trust under subsection 162 (a).

The second question (which respondent relies upon here), was whether the allowable depreciation upon the trust property and the tax exempt income received by the trust should be allocated between all the beneficiaries, taxable and nontaxable, in computing the net income distributed to beneficiaries which was subject to tax.

The question of allocation of depreciation arose under section 23 (1) of the Revenue Act of 1934,[4] which specifically provided for the apportionment of income tax deductions arising from depreciation of trust property among beneficiaries of the trust estate. But there is no statute directing such apportionment in the case of long term capital

---

[3] SEC. 162. NET INCOME.

* * * * * * *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

[4](1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * * *In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.* [Italics supplied.]

gains in determining the gross income of the trust, and this question in the *Grey* case is not pertinent to the solution of the question here. In the *Grey* case the Board of Tax Appeals also held that tax exempt income (arising from interest on bonds) be prorated between taxable and nontaxable beneficiaries. Here again the decision in the *Grey* case has no bearing on the question before this Court for the reason that nontaxable income is not included in gross income under the specific provisions of section 22 (b) (4), whereas capital gains are included in the definition of gross income under section 22 (a), and section 117 of the code only prescribes the "percentages taken into account" in computing *net income* subject to tax. In the case at bar the trustees, under specific directives in the trust instrument are distributing to the charitable corporation 45 per cent of the "net income" of the trust after payment of designated expenses, not 45 per cent of the "taxable net income" as defined by law.

Section 162 (a) of the Internal Revenue Code, under which petitioners herein, as trustees, made this distribution, authorized the trustees in their accounting to "be allowed as a deduction any part of the gross income without limitation which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for" charitable purposes. The trustees made their distribution of the gross income of the estate after the payment of expense according to the terms of their trust agreement, and this Court does not feel empowered to interfere with that distribution under the provisions of the above section, even though the distribution, as made, may have reduced the amount of taxes which the Government might otherwise have collected from the taxable beneficiaries. It is well to bear in mind that, although the Government may lose some tax revenue, donations to charity have been encouraged, and that was the evident purpose of section 162 (a). If, as respondent suggests, this is an absurd result, it is our feeling that the problem is legislative rather than judicial.

In *Continental Illinois National Bank & Trust Co.* v. *United States*, 18 Fed. Supp. 229, one-half of the property at termination of the trust estate was to go to St. Luke's Hospital, an admitted charitable organization. In the taxable year $22,109.55 was permanently set aside for the hospital. The Commissioner sought to offset the deduction of this amount by allocating the depreciation sustained on the trust property between the trust and the hospital and allowing only one-half of the entire depreciation in computing the income of the trust. In denying the offset the Court of Claims said:

We do not feel that it is necessary to enter into a discussion of this offset as presented by the defendant. The section allowing the charitable deduction, section 219 (b) (1) of the Revenue Act of 1926, 44 Stat. 32, provides that the deduction shall be allowed "without limitation." If an adjustment is to be

made which affects that allowance, it must be clearly shown that it does not do violence to that section which allows the deduction without limitation. * * *

It would appear therefore that depreciation may not be apportioned in derogation of section 162 (a), although it may be apportioned among beneficiaries in determining their tax liability in accordance with section 23 (1). *Charles F. Grey, supra.*

In *Emma B. Maloy*, 45 B. T. A. 1104, cited by the respondent, the issue was whether the petitioner had omitted from gross income an amount properly includible therein which was in excess of 25 per cent of the gross income stated in the return. This involved the question of whether, in computing "gross income stated in the return," as that phrase is used in section 275 (c) of the Revenue Act of 1934, only the taxable portion of capital gains may be taken into account. There was no question of charitable gifts and section 162 (a) was not involved. The case is clearly distinguished from the instant case on both the facts and the applicable law. Our question here is not what may be "taken into account" under section 275 (c) in computing the gross income stated in the return, but what may be deducted under section 162 (a) on account of an amount paid or permanently set aside for charitable purposes, under the terms of the trust instrument.

In *Marion C. Tyler Trust*, 5 T. C. 729, there was paid over to charitable institutions a sum in excess of gross income for the taxable year. A part of this sum was from income accumulated, including capital gains. This Court held that the amount so paid over was a legal deduction from income under section 162 (a).

In *Estate of Edward T. Bedford*, 39 B. T. A. 1039, it was held that, where part of the gross income is to be used pursuant to the terms of a will exclusively for charitable or educational purposes, it is deductible from the income of the estate under section 162 (a), even though it is payable from principal in years when income is insufficient. In its opinion the Board pointed out that "Section 162 (a) allows a deduction under entirely different circumstances from those described in (b) or (c). It does not make allowances depend upon whether the amount is to be included in the income of the recipient." Under (b) and (c) the income is deductible which is to be distributed currently to the beneficiaries, but the amount so allowed is taxable to the beneficiaries, whether distributed or not. The scheme being to prevent any income of the estate or trust escaping taxation "unless definitely exempted," *Helvering* v. *Pardee*, 290 U. S. 365. To the same effect is *Helen G. Bonfils et al., Executors*, 40 B. T. A. 1079; affd., 115 Fed. (2d) 788. The case at bar is one where the income is definitely exempted under the statute.

In *Old Colony Trust Co.* v. *Commissioner*, 301 U. S. 379, the Supreme Court construed section 162 (a) as allowing deductions to the full extent of the gross income. It held that the "language should be construed with the view of carrying out the purpose of Congress—evidently the encouragement of donations by trust estates. \* \* \* The design was to forego some possible revenue in order to promote aid to charity."

Under the rationale of the above decisions, it appears clear that where the will or deed creating the trust directs that amounts be paid or permanently set aside for charitable purposes, amounts so paid or set aside are deductible under section 162 (a) in computing the net taxable income of the trust. We hold therefore that the petitioner is entitled to deduct the full amount so paid or set aside, i. e., 45 per cent of the net income of the trust.

*Decision will be entered under Rule 50.*