**COMMISSIONER OF INTERNAL REVENUE v. CENTRAL HANOVER BANK & TRUST CO. et al.**

No. 270, Docket 20545.

Circuit Court of Appeals, Second Circuit.

July 24, 1947.

Writ of Certiorari Denied Nov. 24, 1947.

See 68 S.Ct. 208.

---

Sewall Key, Acting Asst. Atty. Gen., and Helen R. Carloss and Hilbert P. Zarky, Sp. Asst. to the Atty. Gen., for petitioner.

J. S. Seidman, of New York City, for respondents.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The taxpayers are trustees under a trust agreement executed by John E. Andrus, since deceased, under date of December 30, 1921. On March 15, 1942, they filed a Federal Income Tax Return for the year 1941, with the Collector of Internal Revenue for the Second District of New York.

The trust was created to continue during the lives of two designated persons and during their lives the income of the trust was to be distributed as provided in the agreement. At the death of the survivor of these individuals the corpus of the trust was to be distributed. This period during which the income was to be distributed is referred to as the "Primary Trust Term."

The trust agreement provided, among other things, that the trustees were:

"First: To collect and receive the dividends, interest, income, rents, issues and profits on or arising from the 'Trust Estate' (hereinafter called 'Income') and after paying therefrom all expenses of administration and all items which are hereafter provided to be paid out of Income or which the Trustees in their discretion shall determine to pay from Income, to pay the net amount of said Income as follows, viz.:

"(a) Quarterly or at such other intervals as shall be convenient in the administration of the Trust Estate during the Primary Trust Term, the Trustee shall pay forty-five percent (45%) of such net income to Surdna Foundation, Inc., a charitable corporation, organized and existing under the laws of the State of New York, and on the termination of said Primary Trust Term the Trustees shall transfer, convey, assign and set over unto said Surdna Foundation, Inc., forty-five percent (45%) of all of the capital of the Trust Estate as it shall then exist, for its sole and absolute use and benefit forever."

The balance of the income of this trust was to be distributed among a number of beneficiaries whose incomes were subject to income tax.

The Surdna Foundation, Inc., is a New York corporation organized for exclusive charitable purposes. Under the provisions of the trust agreement forty-five per cent of the trust's net income for the year 1941 was paid or permanently set aside for the Surdna Foundation, Inc.

It is stipulated by counsel for both sides that during the year 1941 the long-term capital gain from assets held more than 24 months was $87,408.39. The long term capital loss from assets held more than 18 months, but not more than 24 months, was $2,461.25. Income, other than that arising from capital gains, was $16,769. Deductions, other than contributions, totalled $19,224.01. The total net long-term capital gain was $84,945.14. The net income of the trust prior to deduction for contributions was $82,490.52.

In returning for taxation the income received in the year 1941, the taxpayer reported charitable contributions of 45% of $82,490.52, namely, $37,120.74, and claimed that the amount paid or permanently set aside was deductible in full in computing taxable net income of the trust for the year 1941 under § 162(a) of the Internal Revenue

Code, 26 U.S.C.A. Int.Rev.Code, § 162(a).[1] The Commissioner contends that the deduction of the amounts paid or permanently set aside to a charitable corporation is limited to 45% of the taxable income, i.e., the income after applying to the capital gains (and capital losses) the percentages prescribed by § 117(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 117(b),[2] prior to the 1942 Amendment.

The Tax Court adopted the view taken by the taxpayer and from its decision the Commissioner has appealed. We think the Tax Court erred in holding that the taxpayer was entitled under § 162(a) to deduct the full amount set aside or paid for charitable purposes. It is to be noted that Section 162(a) allows as a deduction for charitable contributions "any part of the gross income, without limitation, which pursuant to the terms of the * * * deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o) * * *."

■ Section 22(a) of the Revenue Act, 26 U.S.C.A. Int.Rev.Code, § 22(a), in its definition of "gross income," from which the deduction of charitable contributions is to be made under Section 162(a),[3] provides as follows:

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, or from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * .*"

"Gains" as defined in § 117(a) (4) and (5) include long-term capital gains "from the sale or exchange of a capital asset held for more than 18 months, *if and to the extent such gain is taken into account in computing net income*." (Italics supplied.)

■ Accordingly the amount of long-term capital gain not taken into account under § 117 does not constitute gross income of the trust under § 22(a). And, since the deduction allowed by § 162(a) is restricted to payments made out of "gross income," the deduction here must be limited to that portion of the charitable gift which was made out of statutory gross income.

---

[1] "§ 162. Net income
"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—
"(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o) ) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit."

[2] "§ 117. (b) Percentage taken into account. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:
"100 per centum if the capital asset has been held for not more than 18 months;
66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;
"50 per centum if the capital asset has been held for more than 24 months."

[3] While § 22(a) is part of the General Provisions of the Internal Revenue Code and § 162(a) is included in Supplement E of the Code, it is clear that the definitions in the General Provisions apply to Supplement E, in the absence of specific exceptions, since 26 U.S.C.A. Int.Rev. Code, § 4 provides:
"*Special classes of taxpayers*
"The application of the General Provisions and of Supplements A to D, inclusive, to each of the following special classes of taxpayers, shall be subject to the exceptions and additional provisions found in the Supplement applicable to such class, as follows:
"(a) Estate and trusts and the beneficiaries thereof,—Supplement E."

The Tax Court in its opinion, per Harlan, J., seems to have regarded the words "without limitation" in § 162(a) as entitling the taxpayer to the full amount of its contributions derived from gains whether or not those gains were taken into account for tax purposes. We think it clear that the words "without limitation" only meant to remove from contributions of trust income the limitation of 15% which the statute allows as a deduction in the case of an individual. In other words, the term "without limitation" has no bearing upon the problem here.

The Tax Court also seems to us to have been in error in ruling that capital gains are to be taken into account, for the purpose of determining the gross income from which contributions and, correspondingly, deductions may be made, to the full extent they are earned for the general purposes of the trust. For, as we have already said, long-term capital gain and long-term capital loss under § 117(a) (4) and (5) only mean gain or loss to the extent that they are "taken into account in computing net income." The previous decisions in Grey v. Commissioner, 41 B. T.A. 234, affirmed, 7 Cir., 118 F.2d 153, 141 A.L.R. 1113, and Maloy v. Commissioner, 45 B.T.A. 1104, which Judge Harlan attempted to distinguish in his opinion would seem to furnish sound analogies in dealing with other sections of the statute and to support our conclusion that the deduction to be allowed to the taxpayer should be limited to 45% of the taxable gross income, i. e., the income after applying to the capital gains (and capital losses) the percentages prescribed by § 117(b) of the Internal Revenue Code, and not 45% of $82,490.52. The decision of the Tax Court in Green v. Commissioner, 7 T.C. 263, also supports our view that "gross income" as used in Section 162(a) means statutory gross income, and not "gross income" in the ordinary accounting sense.

For the foregoing reasons the decision of the Tax Court is reversed and the proceeding is remanded to it for the purpose of recomputing the tax in accordance with the views expressed in this opinion.