JAMES M. McDONALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23887.    Filed March 23, 1955.

*Philip M. Aitken, Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

SUPPLEMENTAL OPINION.

RICE, *Judge:* The deficiency determined by respondent was based originally on the theory that the proceeds from the sale of cattle by petitioner were taxable as ordinary income rather than capital gains. But, by amended answer, respondent affirmatively raised an alterna-

tive issue which must now be decided. Respondent contends, in this alternative issue, that if the proceeds of such sales are taxable as capital gains (as they must be according to the holding of the Court of Appeals) then petitioner's net income for 1946 must be recomputed pursuant to section 130 of the Internal Revenue Code of 1939,[1] in order to limit the deductions (other than taxes and interest) allowable for his dairy and breeding herd to $50,000 for that year.

Respondent concedes that if 100 per cent of the capital gains realized by petitioner on the sale of cattle is includible in the gross income of his dairy and breeding herd, the deductions allowable for that business will not exceed its gross income by $50,000 for 1946 and, consequently, section 130 will not apply. However, respondent contends that only one-half of capital gains is properly includible in gross income. Computing gross income in this manner, he has determined that petitioner's deductions (other than taxes and interest) attributable to this business exceeded his gross income therefrom by more than $50,000 for 5 consecutive years. Respondent, therefore, contends that petitioner's net income for the year here in issue, 1946, must be recomputed pursuant to section 130 (a) in order to limit his deductible losses from his dairy and breeding herd for that year to $50,000.

Whether all or one-half of the capital gains realized by a taxpayer are includible in his gross income for the purpose of a section 130 recomputation appears to be a question not heretofore decided. Respondent relies on *United States* v. *Benedict*, 338 U. S. 692 (1950). In that case, the trustees under a testamentary trust had, as directed in the will, set aside 45 per cent of the trust's net income to a charitable corporation. Included in the trust's net income were long-term capital gains. The trustees claimed the right to deduct the full amount of the contribution, pursuant to section 162 (a), which provides for the deduction from trust income of "any part of the gross income" paid over to a charitable corporation. This was opposed on the theory that part of this contribution was made from capital gains, only half of which are taken into account in computing net income. The Supreme Court was thus faced with the problem of whether all or one-half of the capital gains realized by the trust were includible in gross income for the purpose of determining the amount of charitable con-

---

[1] SEC. 130. LIMITATION ON DEDUCTIONS ALLOWABLE TO INDIVIDUALS IN CERTAIN CASES.

(a) RECOMPUTATION OF NET INCOME.—If the deductions (other than taxes and interest) allowable to an individual (except for the provisions of this section) and attributable to a trade or business carried on by him for five consecutive taxable years have, in each of such years, exceeded by more than $50,000 the gross income derived from such trade or business, the net income of such individual for each of such years shall be recomputed. For the purpose of such recomputation in the case of any such taxable year, such deductions shall be allowed only to the extent of $50,000 plus the gross income attributable to such trade or business, except that the net operating loss deduction, to the extent attributable to such trade or business, shall not be allowed.

tributions deductible pursuant to section 162 (a). The Court stated the issue as follows, p. 696:

The narrow statutory question thus presented is whether the entire recognized capital gains or only that half taken into account under § 117 (b) shall constitute gross income for tax purposes. Stated conversely, the question is whether that half of a taxpayer's recognized capital gains that is not taken into account for tax purposes shall be left out of account by way of its initial exclusion from gross income, or by way of its subsequent deduction from gross income. On this precise question the Code is silent. No provision of the Code and nothing in the legislative history or administrative practice expressly settles the course to be followed. We, therefore, seek the purposes of the applicable sections of the Code and adopt that construction which best gives effect to those purposes.

The two sections there involved were sections 162 (a) and 117 (b). The Court found that the purpose of section 162 (a) would be served by either of the constructions urged by the parties, but that the inclusion of 100 per cent of the capital gains in gross income

would result in taxing the capital gains at substantially less than 50% of the amount at which they would be taxed if they were ordinary income. To the extent that the amount subject to tax goes below that percentage, it fails to give effect to the purpose of § 117 (b). * * *

The Court therefore held, at pages 698 and 699:

We treat the words in § 117 (b), which state that only 50% of certain recognized capital gains "shall be taken into account in computing * * * net income," as applying to the entire computation of the tax, beginning with the statement of the gross income of the trust and concluding with its taxable net income. * * * We treat that percentage of capital gains which expressly is not to be taken into account in computing taxable net income as also excluded from statutory gross income. * * *

The Supreme Court could find nothing in the Code or legislative history to settle the problem of whether gross income included all or one-half of capital gains. Nor could it find any help in the alternative formula for computing gains provided by section 117 (c).[2] In *Commissioner* v. *Central Hanover B. & T. Co.*, 163 F. 2d 208 (C. A. 2, 1947), certiorari denied 332 U. S. 830 (1947), it was held that section 22 (a) required the inclusion in gross income of "gains" only as defined in section 117 (a) (4) and (5); that long-term gains, as defined in that section, consist only of the amount actually taken into account in computing net income; and that "Accordingly the amount of long-term capital gain not taken into account under § 117 does not

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.
    (c) ALTERNATIVE TAXES.—
       *      *      *      *      *      *      *
      (2) OTHER TAXPAYERS.—If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 11 and 12, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:
      A partial tax shall first be computed upon the net income reduced by the amount of such excess, at the rates and in the manner as if this subsection had not been enacted, and the total tax shall be the partial tax plus 50 per centum of such excess.

constitute gross income \* \* \* under § 22 (a)." This theory was rejected by the Court of Claims in *Helen W. Benedict, et al.*, 112 Ct. Cl. 550, 558, 81 F. Supp. 717 (1949), revd. 338 U. S. 692 (1950), holding that:

Section 117 (a) (4) recognizes as gross income the entire gain defined by Sections 22 and 111, and then classifies such gain as a "long-term capital gain" for special treatment in computing net income only if the asset from which such total or gross gain was derived, had been held for more than 6 months.

In reversing the Court of Claims in the *Benedict* case, the Supreme Court restricted its holding to that interpretation of the sections involved as would best effectuate the congressional intent. We think that approach should be used here.

Section 130 became a part of the Code in 1943 to limit the so-called "hobby losses" of individuals. If an individual's deductions [3] from a trade or business exceed his gross income therefrom by more than $50,000 for each of 5 consecutive years, this section requires that his net income be recomputed to limit his deductible losses from that business to $50,000 for each of such years. We have carefully examined the legislative history of this section and are convinced that it was designed to limit the deductibility of losses only with respect to those businesses which were actually conducted at a loss in excess of $50,000 for each of 5 consecutive years. It was recognized in the debate in the Senate that this section might affect many taxpayers who did not conceive of the operation of their unprofitable business as hobbies and that they might suffer large losses during the developmental stage. But, such history shows that the legislators intended to limit the deductibility of losses from such business also.

However, if respondent's argument is correct that only one-half of an individual's capital gains is includible in gross income for the purpose of this recomputation, even profitable businesses would sometimes be affected. There is nothing in the legislative history of the section that even remotely compels this result. The following illustration will serve to show the unsoundness of respondent's position. Assuming that a taxpayer's income is $400,000 which he has received from the sale of raised cattle and milk from his breeding and dairy herd, and that his expenses for the year were $305,000, the results of his operations for the year would be:

| | |
|---|---:|
| Sale of milk | $100,000 |
| Sale of cattle | 300,000 |
| Total income | $400,000 |
| Less: Expenses | 305,000 |
| Taxpayer's profit | $95,000 |

[3] With certain specified exceptions, see footnote 1, *supra*.

Under respondent's theory of section 130, this individual's tax would be recomputed and his net taxable income increased $5,000, because his deduction for expenses would be limited to $300,000, as the following figures illustrate:

| | | |
|---|---:|---:|
| Ordinary income: | | |
|     Sale of milk | | $100, 000 |
| Capital gains: | | |
|     Sale of cattle | $300, 000 | |
|     Less one-half because long-term capital gain | 150, 000 | 150, 000 |
| Gross income | | $250, 000 |
| Total expenses | | 305, 000 |
|     Taxpayer's "loss" | | $55, 000 |

Since the loss exceeds $50,000, the taxpayer's liability for taxes must be recomputed under section 130, as follows: [4]

Total Deductions Under Section 130

| | | |
|---|---:|---:|
| "Gross income" | $250, 000 | |
| Statutory maximum | 50, 000 | $300, 000 |
| Expenses deducted on return | | 305, 000 |
| Amount of deduction which is in excess of allowable deduction under section 130 would be added to the taxpayer's net taxable income | | $5, 000 |

Thus, in spite of the fact that this individual was operating a profitable business, showing a profit of $95,000, the Commissioner, under his theory, could add $5,000 more to his net taxable income which he did not make or receive, and all on the theory that he was running an unsuccessful business with losses exceeding $50,000 which required a recomputation of his taxes under section 130.

We, therefore, hold that, for the purpose of a section 130 recomputation, gross income includes 100 per cent of the capital gains realized by an individual.[5] As in the *Benedict* case (which construed a different section of the Code), we follow the rationale there used by the Supreme Court and reach a conclusion that will best effectuate the congressional intent underlying the enactment of section 130; and,

---

[4] Assuming losses in excess of $50,000 for each of the 4 preceding years.

[5] Regs. 111.

SEC. 29.22(a)–7. GROSS INCOME OF FARMERS.—A farmer reporting on the basis of receipts and disbursements (in which no inventory to determine profits is used) shall include in his gross income for the taxable year (1) the amount of cash * * * received during the taxable year from the sale of live stock * * * which were raised during the taxable year or prior years, * * *

while the result herein is different from the result in that case, we feel it is justified here, as it was there, in order to give proper effect to the purpose of the section.[6]

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[6] For interpretations of a different section of the Code dealing with the amount of capital gains includible in gross income for the purpose of the application of the 5-year statute of limitations pursuant to section 275 (c), see *Emma B. Maloy,* 45 B. T. A. 1104 (1941); but cf. *American Foundation Co.,* 2 T. C. 502 (1943).