COMMISSIONER OF INTERNAL REVENUE v. SWITLIK (four cases).
Nos. 10166–10169.

United States Court of Appeals
Third Circuit.

Argued May 24, 1950.

Decided Sept. 12, 1950.

Edward J. P. Zimmerman, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Helen Goodner, Special Assistants to the Attorney General, on the brief), for petitioner.

Sydney A. Gutkin, Newark, N. J. (David Beck, Newark, N. J., on the brief), for respondents.

Before GOODRICH, WOODBURY and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

These petitions for review present a novel facet of a problem not unfamiliar in the field of tax law. The question is whether payments made by the taxpayers in 1944 in satisfaction of their respective liabilities as transferees are deductable as ordinary losses in that taxable year. The Tax Court, one judge dissenting, concluded that the payments are deductible in full from gross income as ordinary losses under Section 23(e)(2) of the Internal Revenue Code, 26 U.S.C.A. § 23(e)(2).[1] 13 T.C. 121.

There is no controversy as to the basic facts. The taxpayers, in August, 1941, and for a period of more than twenty-four months prior thereto, owned stock in the Switlik Parachute & Equipment Company, a New Jersey corporation. In August, 1941, the stockholders of the corporation by resolution directed that the corporation be liquidated. The corporation's tax liability for 1941, as determined by its long-employed certified public accountant, was taken into consideration in determining the amount of the liquidating dividend. The taxpayers received distributions in liquidation, their pro rata share of which they reported in their individual income tax returns for the taxable year 1941 as long term capital gains, of which fifty percent was taken into account.

In 1942, the commissioner made a determination of deficiencies against the corporation totalling $92,107.80 in federal taxes for the years 1940 and 1941, which deficiencies were appealed by the corporation. However, by agreement, the deficiencies were settled for $35,125.93, and in March, 1944, the Tax Court made its order accordingly. By reason of the dissolution of the corporation and the distribution in August, 1941, of substantially all of its assets to its stockholders in liquidation, the

---

1. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * *

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— * * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * *."

corporation was rendered unable to pay the deficiencies in tax. The taxpayers as its stockholders, became liable as transferees therefor, plus the statutory interest.[2] by an agreement dated March 6, 1944, the taxpayers mutually agreed to be liable as transferees for the deficiencies determined against the corporation. They treated the payments made in 1944 in satisfaction thereof as losses incurred in a transaction entered into for profit, and deducted the entire amount of the payments from gross income. The Commissioner, upon examination of the returns, made an adjustment not here in issue, but allowed the deductions claimed. Nevertheless, in 1947, he determined deficiencies in the taxpayers' returns for 1944: He allowed as ordinary loss deductions interest on the deficiencies in taxes of the corporation subsequent to August 10, 1944, and the legal and accounting fees incurred in connection therewith; he concluded, however, that the taxpayers were entitled to deduct as a capital loss only fifty percent of the amount of the deficiences of the corporation's taxes for 1940 and 1941, plus interest to August 10, 1941, which they paid in satisfaction of their liability as transferees.

In the Tax Court, the Commissioner contended that the relationship of the payments in issue to the long term gains realized by the taxpayers upon the dissolution of the corporation is so close as to give the payments the character of long term losses, for they represent tax payments which would ordinarily have gone to reduce the liquidation dividend. In this Court, the Commissioner has shifted his position to emphasize the fact that in 1941, pursuant to Section 117(b) of the Internal Revenue Code, 26 U.S.C.A. § 117(b), only fifty percent of the capital gain on the liquidation dividend was taken into account. Consequently, it is said, to allow the deduction of the full amount of the payments in 1944 assumes that they are chargeable wholly to the portion of the capital gain taken into account

in 1941.[3] Reference is made to United States v. Benedict, 1950, 338 U.S. 692, 70 S.Ct. 472, in this connection by the Commissioner.

Previous to the decision in North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, the Board of Tax Appeals, in two cases substantially similar to that here involved, adopted the view that the proper treatment of the tax problem presented was to reopen the tax return for the year in which the gain was reported and to reduce the amount thereof. Appeals of Barker, 1926, 3 B.T.A. 1180; O'Neal v. Commissioner, 1930, 18 B.T.A. 1036. However, in the North American case, the Supreme Court said, 286 U.S. at page 424, 52 S.Ct. at page 615, 76 L.Ed. 1197: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * If in 1922 the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year."

Accordingly, buttressed by the subsequent decision in Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, the Board of Tax Appeals, and later the Tax Court, have rejected the Barker and O'Neal result as inconsistent with the concept of the single year as the unit of taxation. Furlong v. Commissioner, 1941, 45 B.T.A. 362; Koppers Co. v. Commissioner, 1944, 3 T.C. 62 affirmed on other issues 3 Cir., 1945, 151 F. 2d 267; Estate of Henry Mills v. Commissioner, 1945, 4 T.C. 820; Pittman v. Commissioner, 1950, 14 T.C. 449. We have previously expressed our adherence to that principle: Freihofer Baking Co. v. Commissioner, 3 Cir., 1945, 151 F.2d 383. And

---

2. See Section 311(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 311(a) (1).

3. As to the propriety of raising an issue for the first time in the Court of Appeals, see Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. There does not appear to exist here compelling reasons for making an exception to the general rule there stated.

we agree with its application in the circumstances of the instant cases. Cf. Haberkorn v. United States, 6 Cir., 1949, 173 F.2d 587; St. Regis Paper Co. v. Higgins, 2 Cir., 1946, 157 F.2d 884, certiorari denied 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288.

The Commissioner concedes that the payments in 1944 do not represent losses from the sale or exchange of capital assets so that the deduction of the amounts paid is determined directly by the capital gains and losses provisions of Section 117 of the Code. He concedes also that a loss deduction is due the taxpayers for the taxable year 1944 under the theory of the cases already cited.[4] Notwithstanding, the Commissioner characterizes the payments as capital losses, deriving their nature from the liquidation in 1941 which is denominated a capital transaction by Section 115(c) of the Code, 26 U.S.C.A. § 115(c). The Tax Court, adhering to the principle of the taxable year, determined that the capital transaction was concluded in 1941, when the distributions became the taxpayers' property; that there was no sale or exchange in 1944; and that the losses sustained by the taxpayers as a result of the satisfaction of their liability as transferees, under the circumstances, were ordinary losses in 1944.

■■■■ We agree with the holding of the Tax Court. The fact that the transferee liability which occasioned the losses grew out of distributions which resulted in capital gain in 1941 is not alone decisive. "* * * not every gain growing out of a transaction concerning capital assets is allowed the benefits of the capital gains tax provision. Those are limited by definition to gains from 'the sale or exchange' of capital assets." Dobson v. Commissioner 1944, 321 U.S. 231-232, 64 S.Ct. 495, 88 L.Ed. 691. Accepting the Commissioner's concessions, as we deem them in accordance with the law, that the pragmatic concept of annual accounting prevails, that a loss deduction is due the taxpayers as a result of the satisfaction of their transferee liability, and that the payments do not represent losses from the sale or exchange of capital assets, we are obliged to follow the language of the Internal Revenue Code. Accordingly, the losses sustained by the taxpayers in 1944 are ordinary losses and may be deducted pursuant to the provisions of Section 23(e) (2). See Treas. Regs. 111, Section 29.23(e)-1. We need only note that the Commissioner has not asserted, nor has the Tax Court found, any untoward motivation for the distributions in liquidation which should bring about a different result.[5]

Finally, we do not consider apposite the decision in United States v. Benedict, supra, unless it be to the supporting proposition that the language of the Code should prevail. Plainly, the problem there involved a single taxable year.

For the reasons stated, the decisions of the Tax Court will be affirmed.

---

4. See also G.C.M. 16730, C.B. XV-1, p. 179, recommending revocation of I.T. 1164, C.B. I-1, p. 17, which was then revoked by I.T. 2981, C.B. XV-1, p. 274.

5. It may be noted parenthetically that a transferee's liability is secondary and is limited by the amount of his liquidation dividend, not merely by the pro rata share of the corporation's obligation in the ratio which the transferee's stock bears to the total outstanding stock at the time of the liquidation. He has, of course, a right to contribution from other stockholders subject to their personal defenses. See Phillips v. Commissioner, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289. Here, the taxpayers agreed to contribute, but it may be noted that one remaining stockholder (the wife of one of the taxpayers) did not participate in that agreement.