DUVEEN BROTHERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25804. Promulgated July 31, 1951.

*Henderson Mathews, Esq.*, for the petitioner.
*Sheldon V. Ekman, Esq.*, for the respondent.

## OPINION.

Harron, *Judge:* The question is whether the petitioner sustained an ordinary loss in its fiscal year ended April 30, 1945, under section 23 (f) in the amount of $30,950, the sum paid to purchasers of Kress & Company stock. The respondent has determined that the payment represents a long term capital loss.

The parties have chosen to narrow the issue by the pleadings. No question is presented as to whether the total price per share accrued at the dates of the sales, regardless of the contingencies under the agreement involved.

The petitioner has referred to the agreement as a guaranty, and the reimbursement payments as "guaranty payments." In our opinion both expressions are misleading. In any event, terminology is not controlling. In reality, the agreement was to return to purchasers part of the purchase price per share, the time of the payment, if any, and the amount thereof being contingent upon the happening of several events. The redemption of the stock in December 1944 at the call price of $11 per share brought about the occurrence of the contingencies, and the petitioner refunded the total sum of $30,950 to the purchasers.

The total amount realized upon the sales of the block of 50,000 shares of stock was $610,000. The net amount realized after the refund of $30,950 was $579,050. The substance of the agreement was that, instead of disposing of the stock at from $11.75 to $12.50 per share, the stock was sold at lesser amounts per share. The payments to the purchasers were refunds per share of parts of the purchase prices.

The sales transactions were completed in fiscal years prior to the year ended April 30, 1945. They gave rise to long term capital gains which properly were reported in the years of the sales. In our opinion, the refunds of parts of the purchase price paid for the stock are unquestionably part of the general transaction involving sales of capital assets. The refunds to the purchasers of the stock represent a loss to the petitioner. Since the loss was sustained in connection with the sale of stock, it is a capital loss. Cf. *Stanley Switlik*, 13 T. C. 121, affd. (C. A. 3, 1950) 184 F. 2d 299. The *Switlik* case presented a different factual situation and is distinguishable from this proceeding. The respondent's determination is sustained.

Some of the stock, 10,000 shares, was sold during petitioner's 1945 fiscal year. The amount of $12,000 was refunded to the purchasers of the 10,000 shares of stock in the same fiscal year as the stock was sold. Therefore, the refund of $12,000 in the same fiscal year simply reduces the amount of the capital gain. Under Rule 50, the parties shall give effect to this item by reducing the amount of the capital gain attributable to the sale of the 10,000 shares of stock. Instead of a capital gain of $15,023 on this stock, the petitioner realized a capital gain of only $3,023. Cf. *Albert W. Russel*, 35 B. T. A. 602.

The petitioner relies chiefly upon *Stanley Switlik, supra*. That case is not in point. There, the taxpayers were some of the transferees of the assets of a liquidated corporation, who had received liquidating distributions in 1941 upon which they reported long term capital gains. Subsequently, in 1944, the taxpayers entered into an agreement with the Commissioner of Internal Revenue to pay, pro rata, the tax deficiencies of the dissolved corporation for 1940 and 1941, and they made those payments in 1944. The Commissioner conceded, in the *Switlik* case, that the later payments of the corporation's tax

deficiencies, in 1944, did not represent losses from "the sale or exchange" of capital assets. Also, the payments of the deficiencies were not part of any contract or agreement relating to the distribution of the corporation's assets upon liquidation. This Court and the Court of Appeals held, under the facts, that the loss sustained upon the payment of the tax deficiencies, which grew out of transferee liability, was not a part of "a sale or exchange" of capital assets.

The situation in this proceeding is not analogous. Under each contract for the sale of Kress stock, the petitioner agreed to refund part of the purchase price of the stock to the vendee if certain events occurred, and the later payments to the vendees, involved here, were made in compliance with the terms of the very contracts of sales. The payments in question constituted reductions in the sales prices, and they were part of each sales transaction. There was a continuing relation under each sales contract between the total payment received at the time of each sale and the subsequent refund of part of the purchase price. The petitioner realized capital gain as a result of the sales of the Kress stock. In the taxable year, the refunds of parts of the purchase prices should be taken into account as capital loss so that the earlier capital gain is correspondingly adjusted, but by no more than the capital gains provisions of the Code allow. This conclusion is consistent with the rationale of *Dobson* v. *Commissioner*, 321 U. S. 231 (1943). Cf. *Margery K. Megargel*, 3 T. C. 238, 242-247.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I dissent from the majority opinion wherein it holds that a loss of $30,950 which petitioner incurred in its fiscal year 1945 on the payment of a guaranty which it had made was not deductible as an ordinary loss but must be taken as a long term capital loss subject to the limitations prescribed by the statute.

The facts show that at various times during its fiscal years 1944 and 1945, petitioner sold 50,000 shares of 6 per cent special preferred stock of S. H. Kress & Company which it owned. Petitioner's gain on the sale of these shares is not in dispute nor is it disputed that petitioner's gain from the sale of these shares is taxable as long term capital gain. In connection with the sale of these 50,000 shares petitioner gave to Brown Brothers, Harriman & Company, through which the shares were sold, a guaranty which contained, among other things as illustrated in the case of the shares which it sold for $12.25 per share, the following provision:

\* \* \* Should redemption of the stock occur at such a time that the dividends paid or accrued to the Purchasers shall have amounted to less than $1.25 per share, we agree to pay you for the account of your clients the amount by which such dividends paid or accrued to the Purchasers fail to equal $1.25 per share.

On December 14, 1944, the preferred stock of S. H. Kress & Company was redeemed at $11 per share and as a result of the guaranty which petitioner had made it had to pay out in fulfillment of such guaranty, $30,950. This loss it took as an ordinary loss in the taxable year in which it was incurred and I think it was entitled to do so under the applicable provisions of the Internal Revenue Code.

Section 23 (g) (1), I. R. C. reads: "Losses from *sales or exchanges* of capital assets shall be allowed only to the extent provided in section 117." (Emphasis added.) Was petitioner's loss of $30,950 which it incurred in the payment of its guaranty a loss from the sale or exchange of capital assets within the meaning of the applicable statute? I do not think so. When petitioner sold the five different blocks of stock aggregating 50,000 shares during its fiscal years 1944 and 1945, it realized capital gains on each of these sales. The sales were complete when made and the fact that petitioner gave a guaranty with these sales did not postpone in the least petitioner's obligation to report gain from the sales. When subsequently Kress & Company redeemed the shares at $11 per share and petitioner incurred the loss in question in the fulfillment of its guaranty, it was not a loss which was occasioned by the sale or exchange of any capital asset. In fact petitioner incurred no loss in the sale of the 50,000 shares of stock in Kress & Company at any time. It incurred a gain in each of these sales. Its loss was from the fulfillment of its guaranty and that loss was a transaction entirely separate from the sales of stock and, in my judgment, should be separately treated. Petitioner's loss in the fulfillment of its guaranty was, of course, related to its prior sales of Kress stock but not "from sales or exchanges of capital assets." Inasmuch as this loss does not fall within the definition of a capital loss as provided in the statute, I think petitioner is entitled to deduct the loss as an ordinary loss.

I, therefore, respectfully dissent from the majority opinion.

ARUNDELL, JOHNSON, and TIETJENS, *JJ.*, agree with this dissent.