**EDWIN B. STIMPSON COMPANY, Inc., Plaintiff,**

v.

**Joseph P. MARCELLE, Collector of Internal Revenue for the First District of New York, Defendant.**

**Civ. A. No. 11488.**

United States District Court
E. D. New York.

Dec. 15, 1955.

---

7. 26 U.S.C.A. (1939) Chap. 36.

Gabriel E. Torre and Joseph J. Pugh, New York City, for plaintiff.

H. Brian Holland, Asst. Atty. Gen., by Andrew D. Sharpe, and Frederic G. Rita, Attys. Dept. of Justice, Washington, D. C., and Leonard P. Moore, U. S. Atty. for the Eastern District of New York, New York City, by Elliott Kahaner, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

BYERS, District Judge.

This plaintiff—a New York corporation—seeks to recover by way of refund for taxes in connection with its excess profits tax for 1944, $122,910.32. That sum represents two items:

A. $75,303.66 paid in full settlement of an asserted deficiency in estate taxes amounting to $441,758.91 said to be due from the Estate of Edwin B. Stimpson, deceased.

B. $45,000 being the fee paid to its attorneys in bringing about the said settlement.

The total of these figures is $120,303.66 and apparently the difference between this total and the amount demanded in the complaint represents interest claimed.

The theory of the plaintiff is that having paid out of its corporate funds the $75,303.16 as for a transferee liability, it is entitled to deduct that amount as a loss sustained during the taxable year 1944 not compensated for by insurance or otherwise.

That as to the $45,000 legal fees the deduction is proper as an ordinary and necessary business expense.

It will be convenient to consider these items separately, and to relate the attendant circumstances in the inverse order of their occurrence.

Reliance is required to be had upon a stipulation of facts upon which the controversy has been submitted. Since that has been deemed adequate by the parties, the court is not at liberty to inquire into subjects not therein comprehended.

The complaint was filed February 1, 1951, and the answer on May 2 of that year.

On November 11, 1948 the plaintiff paid $102,859.63 tax plus $20,050.59 interest, amounting together to $122,910.22 as part of its excess profits tax for the year 1944, on the theory that deductions in the sum of $120,303.66 (namely $75,303.66 "cost of settling litigation",[1] and $45,000 lawyers fees) had been improperly claimed and were therefore disallowed.

In about 1941 the Commissioner of Internal Revenue proposed an estate tax deficiency of $441,758.91 in connection with the estate taxes payable by the Executor of Edwin B. Stimpson, deceased.

This was the subject matter of the settlement above referred to.

That proposed deficiency was based upon the assertion that the gross estate of the decedent should have included ap-

---

1. Whether these words in connection with the item of $75,303.66 are appropriate, is a matter for present consideration.

proximately $1,530,000 as the value of certain property purchased by the plaintiff corporation from the decedent in 1933.

Edwin B. Stimpson died in 1940, about seven years after the purchase of the property, namely stock, from him, by the plaintiff.

The transaction of purchase is embodied in a contract dated January 18, 1933 which is part of the stipulation. For present purposes it may be summarized as follows:

Stimpson sold to the plaintiff (the then corporate name of which was Howral, subsequently duly changed to the present style)

2,700 out of 3,000 outstanding shares of Edwin B. Stimpson Company;
900 out of 1,000 outstanding shares of Franklin-Kent Corporation;
300 being all outstanding shares of United-Brooklyn Corporation.

These were called operating companies, Howral being then a holding company.

The consideration for the sale was the agreement to pay annuities of $20,000 per year to Stimpson for life; and upon his death, annuities for life to his wife, to his sister-in-law, and to his sister, in varying amounts, and in addition the income taxes payable by each annuitant which would be imposed "if the annuity constituted her entire income."

It does not appear that there was any default in the performance of that contract, so that the inference is supportable that the plaintiff paid in all at least $140,000 to Edwin B. Stimpson on account of the purchase price of the stock. There is no reference to that subject however in the stipulation.

Thus far the basis for the proposed deficiency in the estate tax does not appear nor has it been referred to in the stipulation.

It may be conjectured that the reason for it may reside in the following provision of the contract, although the stipulation is silent on the subject:

"(d) At any time during the lifetime of the Seller the Corporation may (with the approval of the voting trustee or trustees if the voting trust shall not have terminated), sell all its holdings of stock in the Operating Companies (or consent to the sale of the assets represented thereby) and shall thereupon pay to the Seller such portion of the proceeds of such sale as may be agreed upon by and between the Seller and the Corporation; or if they shall fail to agree thereon then the Corporation shall pay to him one-third of the proceeds of such sale. Such payment, whether of a sum fixed by agreement or of a one-third portion as aforesaid, shall be made in full liquidation and discharge of all the obligations assumed by the Corporation hereunder, including particularly the obligations set forth in subdivisions (A) and (B) of article Second hereof, and thereafter neither the Seller nor anyone on his behalf nor any one of the annuitants named in subdivision (B) of said article Second shall have any further right or claim whatsoever against the Corporation or any of its Stockholders by reason of anything contained in this agreement or in the agreements referred to in subdivision (D) of said article Second. In such event all the parties to this agreement and to the agreements referred to in said subdivision (D) of article Second hereof shall be fully released and discharged of and from all further obligations hereunder or thereunder."

It should be said that the agreement provides for a ten year voting trust of all of the stock of the purchasing corporation, and appropriate provisions touching the obligations of the several stockholders of the purchaser to remain in the employ of the company. The quoted provision would seem to have been appropriate to enable the corporation to

dispose of its entire property, but not so as to thereby vitiate the contract of purchase, so far as Stimpson was concerned.

The main stipulation is supplemented under date of January 7, 1955 as follows:

"That in compromising the estate tax deficiency of the estate of Edwin B. Stimpson at $75,303.66, as set forth in paragraph VIII of the stipulation of facts herein, the value of the property received by the plaintiff at the date of death of said Edwin B. Stimpson was agreed to be $500,000; and that the Estate of Edwin B. Stimpson had no other substantial asset with which to contest or to pay the estate tax deficiency."

In view of the foregoing, the theory of the plaintiff is that in 1941, or 1942, it was confronted with what is termed in the fifth paragraph of the complaint a primary and personal liability for such deficiency under Section 827(b) of the Internal Revenue Code, 26 U.S.C.A. (and Section 124 of the New York Decedent Estate Law, McK.Consol.Laws, c. 13).

The allegation is coupled with an assertion that the estate of Edwin B. Stimpson (meaning, one supposes, his executors) "had (no date disclosed) no assets with which to contest the assessment or pay any deficiency." Also that "Imposition of the proposed estate tax liability would have resulted in the sale of all of the plaintiff's assets and the termination of its existence."

As to this paragraph, the answer denies information, etc. as would be expected.

The allegation of a primary and personal liability on the part of the plaintiff seems to expose the core of this aspect of the controversy.

The difficulty of satisfactory analysis lies in the inability to understand the exact problem which confronted the plaintiff corporation when it became aware of the proposed estate tax deficiency on the part of the executors of Stimpson.

The stipulation is silent as to whether the administrative steps necessary to test the legality of the assessment, within the Department of the Treasury which are expounded in Phillips v. Commissioner, 283 U.S. 589, at pages 597 et seq., 51 S.Ct. 608, 75 L.Ed. 1289, were contemplated or undertaken. While that case dealt with Section 280 of the Revenue Act of 1926, and this seems to have arisen under the Act of 1939, it would seem that the two statutes were substantially the same as to the matters here involved.

The tax there upheld was that of a transferee who had received in 1919 a cash distribution on the dissolution of a corporation of which he was a stockholder; a deficiency in income and profits taxes of the company was assessed for 1918 and 1919, and the uncollected balance thereof was exacted of the executor of that stockholder.

Thus the process whereby the tax liability of the corporation was visited upon a stockholder was brought into question and was sanctioned.

Here the original liability was not that of this corporate plaintiff, but in anticipation perhaps of ultimate liability, this corporation undertook negotiations and consummated a settlement of what was an estate tax upon the property of the decedent Stimpson.

The statute, U.S.C. Tit. 26, § 827— 1940 Edition, upon which the transferee liability was said to rest, reads in material part as follows:

"(b) Upon property of transferee. —If (1) except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death, or makes a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which

does not in fact end before his death (A) the possession or enjoyment of, or the right to the income from, the property, or (B) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom, * * * and if * * * the tax in respect thereto is not paid when due, then the transferee, * * * shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, * * * shall be subject to a like lien equal to the amount of such tax. * * * "

The method of assessment and collection against and from transferees, and the period of limitation, are set forth in Tit. 26 U.S.C. § 311, Int.Rev.Act of 1939 as amended, and need not be quoted. A reading of these provisions indicates that there was at least an assessment against the plaintiff as a transferee, which was required to support its liability to pay the asserted deficiency in the Stimpson estate tax, and no such assessment is pleaded in the complaint, or referred to in the stipulation.

In other words, the plaintiff being apprised of the asserted deficiency, and realizing that the law contemplated transferee liability under appropriate circumstances, and without attempting to litigate in any way the presence or absence thereof, interposed its offices to the extent of settling and adjusting the asserted claim. This does not justify the use of the expression above quoted of "cost of settling litigation" in my opinion.

■ The stipulated facts do not reveal why this course of conduct was resorted to; for all that now appears, the action of the Commissioner in asserting the deficiency should have been the subject at least of departmental review, for it was a pretty tenuous thing so far as the disclosure of this stipulation is concerned, with respect to the estate tax. Concerning the liability of the trans-

feree, had the matter been taken to the departmental appellate tribunal, the burden of proof would have been upon the Commissioner. Tit. 26, U.S.C. § 1119.

In Healy v. Commissioner, 345 U.S. 278, at page 284, 73 S.Ct. 671, at page 675, 97 L.Ed. 1007, in a footnote, the court says:

"Transferee liability is secondary to the primary liability of the transferor. To sustain transferee liability the Commissioner must prove that he is unable to collect the deficiency from the transferor. 9 Martens, Law of Federal Income Taxation, § 53.29."

While the complaint alleges (par. 5) that "The Estate of Edwin B. Stimpson had no assets with which to contest the assessment or to pay any deficiency," and the supplemental stipulation is to the same effect, there is no statement as to the possible capacity of beneficiaries under the Stimpson will to respond to the exactions of § 827(b) of the Act (supra).

In discussing the insurance policy aspect of this section, the court pointed out in Rowen v. Commissioner, 2 Cir., 215 F.2d 641, at page 643, that in "determining the validity of a collection sought under Section 311, it is necessary to remember that two questions are involved, viz., (1) is the respondent against whom the collection is attempted a 'transferee' within the meaning of Section 311(a) (1) and Section 311(f); and (2) is the respondent, if a transferee, under a 'liability, at law or in equity,' for the debts—including unpaid income taxes—due and owing from his transferor?"

It seems apparent that the foregoing language is helpful in this case, although the anticipated transferee liability adjusted by this plaintiff did not arise by reason of the presence of insurance policies on the life of Stimpson, deceased.

If the first question were to be inquired into, the status of the plaintiff as a transferee would be determined as the result of subjecting the 1933 contract of purchase of the stock to a great deal

more than the mere proposal of a deficiency by the Commissioner according to Sub. V of the stipulation. The same comment applies to the second question.

It is obviously impossible to discuss the reasons which were deemed adequate by the plaintiff to appropriate $75,303.66 of its funds as it did, since none of those reasons appears in the stipulation. But at least this much is clear: A proposed assessment which so far as this record discloses was of questionable validity, was composed at a substantial sum, perhaps as the least expensive available expedient, without the plaintiff's being confronted with an actual transferee assessment.

This was an insufficient basis to sustain the claim under Section 23(f) of the Internal Revenue Code of 1939, as for a loss sustained by a corporation, not compensated for by insurance or otherwise.

Helpful discussions on the subject have been found in Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795, see also Levitt & Sons v. C. I. R., 2 Cir., 160 F. 2d 209; and Commissioner of Internal Revenue v. Gilt Edge Textile Corp., 3 Cir., 173 F.2d 801.

The facts therein discussed of course are different, but the exposition of the possible impact of legal liability, and the appropriation of corporate funds to avert such a result, in each of these cases, with respect to the assertion of a loss under this section of the law, is believed to point the way to decision against this plaintiff, so far as concerns the item of $75,303.66.

The case of Commissioner of Internal Revenue v. Switlik, 3 Cir., 184 F.2d 299 cited by the plaintiff, is not seen to be to the contrary. The point there discussed was whether a corporate tax deficiency paid by stockholders after distribution in liquidation of the corporation, should be treated as losses deductible under Section 23(e) (2) as ordinary losses, or capital losses.

In this case in the opinion presently held, the plaintiff has not demonstrated any deductible loss under Section 23(f), and cannot prevail as to the item of $75,-303.66.

The other cases cited by plaintiff involve individual transferee liability which differ in essential character to that here asserted for this corporation.

The nature of the anticipated liability on the part of this corporation has been discussed, perhaps at unnecessary length in order to promote an understanding of the nature and extent of the legal services involved in the deduction which is sought to the extent of $45,000 concededly paid, to bring about the settlement of the possible transferee liability.

It is not argued for the defendant that the amount paid was other than fair and reasonable. Perhaps that subject is not deemed to be important in this connection.

The final paragraph of the defendant's brief says: "The claimed expense for counsel fees is not proximately related to any business purpose of the taxpayer; the occasion for their necessity arose solely from the *gift to the taxpayer by Stimpson*" (Italics supplied).

If the contract of purchase annexed to the stipulation embodies a gift, this court has been completely misled. It purports to define the terms of a sale of stock, the purchase price being payable in annual installments of $20,000 for the life of the seller. If those payments were not made, the record at least is silent to that effect.

Again it is said in the same brief, that the legal expenses were incurred "in contesting a liability personal to the corporation which did not arise from any of its business activities. The occasion for the payment of these fees arose wholly and solely because of the gift received by the taxpayer from Stimpson in his lifetime."

The stipulation does not refer to a gift, but to a "transfer in contemplation of or taking effect at death under Section 811(c) of the Internal Revenue Code (1939)."

**38**

The defendant argues that counsel fees incurred by an individual in contesting the amount of a federal gift tax was not deductible under Section 23(a) (2). It therefore assumes—somewhat blandly—its major premise.

The plaintiff corporation believed itself to be confronted with a possible transferee liability which if successful, would have depleted its assets to the extent that the tax gatherer might be successful. To say that a legal expense incurred and paid in behalf of opposing that claim differs in nature from any other threatened levy upon its property under the guise of asserted legal liability, is to assert that which carries less than a minimum of conviction.

If the assessment had been made, and had been legally and successfully contested, the price of that contest would have come out of the funds, i. e., the corporate property. To protect that property is an ordinary and necessary duty on the part of the corporation; which means that an expense, incurred in good faith in the performance of that duty, is an ordinary and necessary expense in carrying on the business of the corporation.

No case has been cited to the contrary of the foregoing proposition, nor has any case been cited or independently brought to light, which is factually similar to this.

The reasoning of the court in allowing a comparable deduction to an individual taxpayer in *Northern Trust Co. v. Campbell*, 7 Cir., 211 F.2d 251, at page 253, has been found helpful:

"It is not the personal liability [transferee] but rather the nature of the expense itself, and the proximate relation to the business or income producing property of the taxpayer which is the standard for determining whether an expense is deductible under § 23(a) (2) or non-deductible under § 24(a) (1)".

The result is that judgment is awarded to the plaintiff in the sum of $45,000, with interest.