ETHEL B. STEVENSON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Stevenson v. Commissioner
Docket Nos. 8435-72, 8436-72, 8437-72.
United States Tax Court
T.C. Memo 1975-257; 1975 Tax Ct. Memo LEXIS 117; 34 T.C.M. (CCH) 1103; T.C.M. (RIA) 750257; August 7, 1975, Filed Sherwin C. Peltin, for the petitioners. James L. Norris, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In docket No. 8436-72, respondent determined deficiencies in petitioners' income taxes of $28,040.10 and $886.36 for 1968 and 1969, respectively; negligence penalties under section 6653(a)[2] of $2,207.91 and $1,839.00 for 1967 and 1968, respectively, were also determined. In docket Nos. 8435-72 and 8437-72, respondent determined identical deficiencies of $57,721.12 and identical negligence penalties *118 under section 6653(a) of $2,886.05 against petitioners separately as transferees for corporate income taxes due from Four B's Industries, Inc. (hereinafter Four B's) for its taxable year ended March 31, 1968. The cases were consolidated for trial. After settlement of some issues, the remaining issues are: (1) Whether petitioners are liable as transferees for corporate income tax due from Four B's on gain from sale of its assets because all such assets were not distributed within the twelve-month period prescribed by section 337(a); (2) Whether payments of corporate income tax to be made by petitioners as transferees of Four B's on gain from the sale of the assets of Four B's may reduce their capital gains realized in earlier years on liquidation of Four B's, or whether such payments are only deductible in the year of payment; and (3) Whether Four B's and petitioners are liable for the five percent penalty imposed by section 6653(a) for negligence in preparing their income tax returns. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Petitioners, *119 husband and wife, were residents of Whitewater, Wisconsin, at all times material herein. They filed joint income tax returns for 1967 and 1969 with the District Director of Internal Revenue, Milwaukee, Wisconsin, and filed a joint 1968 income tax return with the Midwest Service Center, Kansas City, Missouri. Petitioners were cash-basis taxpayers. Petitioners owned all the stock of Four B's, in which their basis was $61,005. They and their son, Robert F. Stevenson, were the directors of Four B's. Petitioner Robert J. Stevenson (hereinafter Stevenson) was president and Ethel B. Stevenson was secretary and treasurer of Four B's. Four B's, a real estate holding company, was incorporated in Wisconsin on April 1, 1953. The only real estate it held was leased to Whitewater Manufacturing Company (hereinafter Whitewater), another corporation wholly owned by petitioners. Early in 1967, a plan developed to sell to Motor Castings Company of Milwaukee, Wisconsin, an unrelated corporation, the foundry portion of the business of Whitewater and the real estate owned by Four B's and rented to Whitewater in which the foundry business was conducted. In April 1967, Stevenson contacted Bernard Goldstein *120 (hereinafter Goldstein), his attorney, and Rolland L. Freitag (hereinafter Freitag), a partner of Virchow, Krause & Company, accountants for Whitewater, Four B's, and petitioners individually, about the proposed sale. In response to Stevenson's request that tax consequences of the proposed sale be examined, Freitag's letter of May 5, 1967, made clear that shareholders of Four B's would be individually taxable on all liquidating distributions received. On May 9, 1967, Four B's adopted a plan of complete liquidation. Four B's accordingly sold its principal asset, the land and building in which the foundry business of Whitewater was operated, on August 1, 1967, for $240,000, resulting in a gain of $215,244.19. The net proceeds of that sale, $235,253.33, were distributed to petitioners and deposited on August 2, 1967, in petitioners' personal savings account. On October 5, 1967, Four B's made another distribution to petitioners, in the amount of $1,878.33. Also in October of 1967, Stevenson turned 200 shares of Hawthorne Mellody stock owned by Four B's over to a stock broker to be sold. The sale was not accomplished at that time, however, because the shares had to be transferred from *121 the name of Four B's to petitioners' names before they could be sold. Petitioners never told Freitag about the two distributions they received in 1967 from Four B's, and Freitag accordingly did not include such distributions on their 1967 income tax return, which he prepared in February 1968. On March 3, 1968, a check for $5, payable to the Secretary of State of Wisconsin, was charged to the checking account of Four B's, reducing its balance to $2,159.78. That check was the only activity in that account since October 5, 1967. The books and records of Four B's showed these assets as of March 31, 1968: Cash
$ 2,159.78
Account Receivable - Stevenson [3]
20,860.33
Account Receivable - Whitewater
9,667.00
Note Receivable - Whitewater
54,000.00
Account Receivable - Hotel Seymour, Inc.
24,736.08
150 Shares - Hotel Seymour, Inc. Stock
15,000.00
200 Shares - Hawthorne Mellody Stock
3,953.00
Total
$130,376.19 The books and records of Four B's reflected no liabilities *122 as of March 31, 1968, and none have been paid by Four B's since then. The list of assets above shows that Four B's owned 150 shares of Hotel Seymour, Inc. stock, which constituted all outstanding stock of that corporation. Respondent determined that a note and second mortgage on Hotel Seymour property, in the principal amount of $27,550, were assets of Hotel Seymour, Inc., and not owned by Stevenson individually during the years in issue. The note paid interest in 1967, 1968 and 1969, and thus admittedly had value during those years. Hotel Seymour, Inc., had no other assets during the years in issue. No note, mortgage, or other documentation of ownership of the note and second mortgage was produced at trial. Late in May 1968, following receipt of the records of Four B's for the fiscal year ended March 31, 1968, Freitag's firm prepared an income tax return for Four B's for that year. That return stated that a section 337 liquidation had been elected and that a distribution during that fiscal year consisted of cash of $235,253.33. During preparation, Freitag discovered that petitioners had failed to include the distributions received on their 1967 individual income tax return. Freitag *123 informed Stevenson that an amended return would have to be filed and that additional tax would be due; Stevenson did not object. Also while preparing the income tax return of Four B's, Freitag asked Stevenson what the source of $3,000 which appeared on Four B's records was, and Stevenson replied that it must have been an amount he had repaid the company. Freitag thus believed that $3,000 received by Four B's was a payment on the account receivable owed by Stevenson to Four B's of $20,860.33. As a result, $3,000 of rental income paid by Whitewater to Four B's was omitted from the return. Since Four B's only reported $3,000 of rental income on its income tax return, omission of $3,000 constituted an omission of 50 percent of its rental income for that taxable year, even though the rental was the main source of its income. The corporate income tax return was filed in early June of 1968. On July 3, 1968, Ethel B. Stevenson deposited $66,667 in the checking account of Four B's, which represented payment by Whitewater of an account receivable of $9,667, a note receivable of $54,000, and $3,000 due Four B's for unpaid rent for the period prior to the property sale. On July 5, 1968, a *124 check for $68,826.78 was drawn on the checking account of Four B's, payable to petitioners; that check was deposited in petitioners' individual checking account, and it reduced the balance in the checking account of Four B's to zero. The funds were deposited and then withdrawn from the checking account of Four B's because Stevenson wanted a record to show that Four B's had been paid from Whitewater and that Four B's in turn paid him and Ethel B. Stevenson. A legal fee of $192.50 for services rendered in connection with dissolution of Four B's, dated July 21, 1969, was paid by Whitewater, and bills for work performed in connection with dissolution of Four B's by Freitag's accounting firm were paid by Whitewater or Stevenson. On August 12, 1968, petitioners filed an amended 1967 joint income tax return which reported the distributions received from Four B's in that year and which accordingly showed an additional $57,925.34 of tax due for that year. The tax paid earlier for 1967 was $9,167.46. In January 1969, Four B's filed a final corporate income tax return for April 1, 1968 to August 31, 1968. On that return, the $15,000 cost of the Hotel Seymour, Inc. stock was written off *125 as worthless, and the corporation's final distribution of assets was listed as follows: Cash, $68,826.78; accounts receivable, $42,858.85; and [Hawthorne Mellody] stock, $3,953.00, for a total of $115,638.63. That return also showed a Federal income tax refund receivable of $262.44, the rights to which were distributed as part of the accounts receivable distributed. An information return filed sometime thereafter by Four B's showed that a distribution of $115,638.63 was paid on "6-1968." On March 26, 1969, the 200 Hawthorne Mellody shares registered in the name of Four B's were exchanged for 200 warrants and 186 shares of National Industries, which were transferred to petitioners as joint tenants. The fair market value of the 200 shares of Hawthorne Mellody stock on July 11, 1968, was $5,063 and the fair market value of the securities received on March 26, 1969, was $4,876. Four B's was dissolved on July 15, 1969. On January 7, 1970, petitioners filed an amended 1968 income tax return which included the 1968 distributions received from Four B's which were omitted from their original 1968 income tax return. The amended return also listed $1,269.62 in interest income received *126 from Claude Peotter, who was making payments on the note from Hotel Seymour. The amended return thus showed $8,739.80 in taxes as due, in addition to the $11,563.33 originally reported. Petitioners' original 1967 and 1968 returns and their amended 1967 income tax return had made no mention of interest received on the note, although amounts were included from that note as interest income to petitioners individually as a result of settlement of that issue before trial. On January 15, 1971, respondent received a transferee agreement in which petitioners assumed and agreed to pay any Federal income taxes determined or adjudged due and payable by Four B's for the taxable year ended March 31, 1968. OPINION The first issue is whether all of Four B's assets were distributed within twelve months after adoption of a plan of complete liquidation. Section 337(a) states the general rule that no gain or loss shall be recognized to a corporation on the sale or exchange of property if it adopts a plan of complete liquidation on or after June 22, 1954, and within the twelve-month period beginning on the *127 date of adoption of such plan all assets of the corporation are distributed in complete liquidation, less assets retained to meet claims. Petitioners contend that all assets were distributed within the twelve-month period, thus causing nonrecognition of gain on the sale of Four B's assets, and respondent contends all assets were not distributed within that period. For the reasons stated below, we agree with respondent. Four B's, a Wisconsin corporation wholly owned by petitioners, adopted a plan of complete liquidation on May 9, 1967; the twelve-month period for distribution of assets thus ended on May 9, 1968. Four B's sold its principal asset on August 1, 1967, for $240,000. This sale resulted in a gain of $215,244.19 which was not recognized in Four B's income tax return for the taxable year ending March 31, 1968. Whether this gain should have been recognized by Four B's because all assets were not distributed pursuant to the plan of liquidation within the twelve-month period provided by section 337(a) is the principal issue herein. As indicted below, we find that Four B's distributed, as a minimum, assets totaling $73,702.78 [4] after expiration of the twelve-month period on May 9, 1968. *128 Three assets the distribution of which is in controversy were an account receivable of $9,667, a note receivable of $54,000, and rent in the amount of $3,000 for the period prior to sale of the real estate, all due from Whitewater, another corporation wholly owned by petitioners. The aggregate of those amounts, $66,667, was deposited in the checking account of Four B's on July 3, 1968, and distributed to petitioners, along with the $2,159.78 balance in that account, on July 5, 1968. Petitioner testified that he deposited the check from Whitewater in the checking account of Four B's to make a record of such transaction; that record does not help his cause. Petitioners argue that deposit of that check and withdrawal of that amount two days later did not revive a defunct corporation. The question is not whether the corporation was defunct, however, but rather whether all assets were distributed within the twelve-month period provided under section 337(a). That Whitewater owed $66,667 to Four *129 B's at any time after the twelve-month period was in itself fatal to non-recognition under section 337(a), regardless of what happened thereafter. Although Whitewater itself was owned by petitioners, there was no action manifesting an intent by petitioners to take those funds as their own. Vern Realty, Inc.,58 T.C. 1005, 1013 (1972), affd. F. 2d (1st Cir. 1973, 73-1 USTC par. 9455). We accordingly hold that the rights to these payments due from Whitewater were not distributed within the twelve-month period provided by section 337(a), and that they were fatal to nonrecognition under section 337(a). Petitioners are accordingly liable as transferees for tax owed by Four B's on gain on the sale of the assets of Four B's. Another asset the distribution of which is in controversy is $2,159.78 retained in Four B's checking account until July 5, 1968. Petitioners contend that such amount, which constituted less than one percent of Four B's assets, constituted "assets retained to meet claims," and thus falls within the exception to the twelve-month rule provided in section 337(a). Petitioners presented evidence that legal and accounting fees did *130 indeed arise after the twelve-month liquidation period. Those claims were actually paid, however, by Stevenson or Whitewater. The $2,159.78 was in fact never used to pay any liabilities after the tweleve-month period. That amount remained untouched in the checking account of Four B's from the end of the twelve-month period until July 5, 1968, at which time it was distributed to petitioners. If distribution had been delayed, the checking account funds could have been used to pay, for example, a legal fee of $192.50 dated July 21, 1969, for dissolution of Four B's. [5] Instead, the funds were distributed to petitioners and the legal fee for dissolution of Four B's was paid by Whitewater. Since the checking account funds could have been used to pay claims arising against Four B's after expiration of the twelve-month period but were not, we hold distribution of those funds, an act typical of petitioners' disregard of the twelve-month requirement of section 337(a), also resulted in failure to comply with the twelve-month requirement of that section. *131 Other assets retained by Four B's need also be considered, not only because of their relevance to section 337(a), but also because our holding as to their worth or time of distribution will effect the computation of tax due from petitioners. Two such assets were an account receivable from Hotel Seymour, Inc. for $24,736.08, and 150 shares of Hotel Seymour, Inc. stock, acquired at a cost of $15,000. A note secured by a second mortgage in the principal amount of $27,500 on Hotel Seymour property paid interest at least through 1969. The question is whether the note was owned by Stevenson or by Hotel Seymour, Inc., prior to liquidation of Four B's. Petitioners contend that the note was owned by Stevenson individually, that the account receivable and stock of Hotel Seymour, Inc., were accordingly worthless, and that formal distribution of worthless "assets" was unnecessary under section 337(a). Respondent contends that the note was owned by Hotel Seymour, Inc., that the account receivable and stock of Hotel Seymour, Inc., were thus valuable, and that formal distribution of that receivable and stock was necessary under section 337(a). Inferential evidence submitted on this point is weak *132 and conflicting, and whether Stevenson actually owned the mortgage was not proved: no note, mortgage, or other documentation of ownership of the note and second mortgage was produced at trial. Petitioners emphasize that interest income from the note for 1967 and 1968 was includable in their individual income tax returns as the result of an adjustment agreed to before trial. We hold that petitioners have not sustained their burden of disproving respondent's determination that the second mortgage was held by Hotel Seymour, Inc. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners certainly had it within their power to produce the note or the mortgage, or a copy thereof, or other documentation of ownership, and thereby substantiate their claim. That interest income from the note was included in their individual income tax returns does prove who owned the note because that issue may very well have been settled as a matter of tactics before trial. Uncorroborated testimony of Stevenson and Goldstein that the note was owned by Stevenson does not, in our view, overcome respondent's determination. Petitioners' failure *133 to produce the note or second mortgage or any other documentation contradicting respondent's determination gives rise to a presumption that such evidence would be unfavorable; "[this] is especially true where, as here, the party failing to produce the evidence has the burden of proof * * *." Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F. 2d 513 (10th Cir. 1947). We accordingly hold that petitioners received a distribution from Four B's of $27,550, the principal amount of the second mortgage, less $703.77 in liabilities owed to creditors other than Four B's, [6] or a net distribution for all Hotel Seymour, Inc. assets of $26,846.23. Since the stock could have no additional worth over that amount, no additional amount need be included as a distribution of stock. Although the date of distribution need not be found for section 337(a) purposes, since late distribution of the other assets described above have already removed this liquidation from that provision, we find that this distribution was made during the final taxable year of Four B's, i.e., from April 1, 1968 to August 31, 1968, as the income tax return for that period stated *134 that final distribution of assets was made during that period. Another asset distributed during that period was an account receivable Stevenson owed to Four B's. A worksheet of August 31, 1968, prepared by the accountants of Four B's, showed a final distribution of this account receivable in the amount of $17,860.33. That amount must be adjusted for two corrections, however: (1) The accountants reduced the account receivable by $3,000 because Stevenson told Freitag a $3,000 payment was a payment on that account, when in fact it was rent. The receivable should accordingly have been increased by $3,000; (2) the accountants treated the distribution of $1,878.33 to petitioners on October 5, 1967, as an increase in this account receivable, i.e., a loan, when in fact it was a distribution; accordingly, the amount of the receivable should be reduced by that amount. Thus the actual amount of the receivable was $18,982, and we find that this asset was also distributed during the corporation's final taxable year.
*135 Another asset of Four B's in dispute was a Federal income tax refund receivable of $262.44. Although that refund had not been received before the end of the twelve-month period, the final income tax return of Four B's shows that all rights to the refund were distributed to petitioners during the corporation's final taxable year. Accordingly, we find that that receivable was distributed between April 1, 1968 and August 31, 1968. Cf. Bird Management, Inc.,48 T.C. 586 (1967). The last asset in question was 200 shares of Hawthorne Mellody stock. Petitioners claim such stock was in effect distributed to them in October 1967 when it was given to a broker for transfer to them individually. Respondent, who originally contended the stock was distributed in 1968, now contends this stock was distributed on March 26, 1969, when the shares were exchanged for 200 warrants and 186 shares of National Industries. After the exchange, the National Industries warrants and shares were transferred to petitioners as joint tenants. Although delivery of fully endorsed stock certificates to *136 a broker with the intent that such securities are to become property of the transferee will effect a beneficial interest in the certificates coextensive with that formerly held by the transferor, with the result that the broker must be regarded as holding the certificates of stock as trustee for the transferee rather than as agent for the transferor, John E. Byrne,54 T.C. 1632, 1640 (1970), affd. per curiam 449 F. 2d 759 (8th Cir. 1971), the evidence herein does not establish that the Hawthorne Mellody stock was given to the broker in October 1967 with the intent to transfer that stock to petitioners individually. Rather, Stevenson testified that he gave the stock to the broker to sell it; Goldstein also testified that a sale was intended; and no evidence has been introduced that a transfer to petitioners individually was intended. Because the evidence indicates that a sale rather than a transfer of the Hawthorne Mellody stock was intended in October of 1967, and because no act was undertaken during the twelve-month liquidation period to transfer ownership of that stock from Four B's to petitioners, we hold that petitioners have not sustained their *137 burden of proof of showing that the stock was transferred in October of 1967. We accordingly hold that the 200 shares of Hawthorne Mellody stock were not distributed to petitioners until March 26, 1969. The parties stipulated that the fair market value of the shares and warrants received at that time in lieu of the Hawthorne Mellody shares was $4,876. This distribution thus also occurred after the twelve-month period. We note that the final corporate income tax return of Four B's showed that the Hawthorne Mellody stock was distributed during the period April 1, 1968 through August 31, 1968; although neither party now contends the stock was distributed during that period, this provides additional support for the conclusion that the stock was not distributed in October of 1967. Because petitioners were transferees of Four B's, we hold that they are liable on gain realized by Four B's on the sale of its assets pursuant to the plan of liquidation adopted by Four B's, as all assets were not distributed within the twelve-month period provided by section 337(a). The second issue is whether petitioners may use corporate income taxes to be paid as transferees for Four B's under the above *138 issue to reduce their capital gains on distributions received in liquidation of their Four B's stock. In other words, petitioners argue that calculation of capital gains in their individual returns for the years 1967 and 1968 was erroneous. We believe that petitioners cannot use payments to be made as transferees for Four B's in later years to reduce distributions in earlier years from Four B's because of the claim of right and annual accounting doctrines. The Supreme Court stated the claim of right doctrine in North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932), as follows: If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * Petitioners received their distributions in 1967 and 1968, and their unrestricted use of those funds since then clearly brings them within the claim of right doctrine. *139 In Roberta Pittman,14 T.C. 449 (1950), this Court held that taxpayer, transferee of a dissolved corporation, could not reduce a liquidating distribution received in 1945 by the amount of corporate tax liability she paid as transferee in 1947. Taxpayer was on the cash basis of accounting, as is true here. The Court stated, at 14 T.C. 451, 452, as follows: The collection of Federal taxes in the United States contemplates an annual accounting by taxpayers. In Burnet v. Sanford & Brooks Co.,282 U.S. 359, the Supreme Court said: It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. This principle is now a familiar one and has often been stated and applied. See Security Flour Mills Co. v. Commissioner,321 U.S. 281, and cases there cited. There is no basis for making *140 an exception to this sound principle in the instant case of a transferee of the assets of a corporation. If it were done here, other exceptions would suggest themselves. If the petitioner's contention, that the capital gain should be adjusted, were to be followed, the result would be to hold in abeyance the final determination of the capital gain on a corporate dissolution until the final corporate income tax had been paid. This would place an unwarranted burden on the tax collection process. We believe Pittman is controlling. Although petitioners contend that their individual returns are open for the same period during which the corporate tax liability is due, and that therefore there would be no unwarranted burden on the tax collection process if an adjustment were made in this case, to accept their rationale would be to eviscerate the annual accounting principle. Every taxpayer with open years could argue that prior years should be adjusted to reflect subsequent events: the resulting confusion and administrative burden would be unacceptable. Furthermore, in Pittman taxpayer's earlier taxable year was also still open. Although it is true, as petitioners note, that Pittman *141 quoted from Stanley Switlik,13 T.C. 121 (1949), affd. 184 F. 2d 299 (3d Cir. 1950), and Switlik was in effect overruled by Arrowsmith v. Commissioner,344 U.S. 6 (1952), Arrowsmith only reversed Switlik as to whether later transactions should result in capital or ordinary loss treatment; indeed, the Court expressly noted, with approval, the annual accounting concept stated in North American Oil Consolidated v. Burnet,supra.Furthermore, the passage quoted above from Pittman, rather than the quotation from Switlik, was the basis for the decision in Pittman.Pittman accordingly retains its vitality as a precedent herein. Another case worthy of note on this point is N. Gordon Phillips,29 T.C. 47 (1957), affd. 262 F. 2d 668 (9th Cir. 1959), in which taxpayer received proceeds from sale of stock in 1951 and was required by a state court judgment to repay that amount in 1953. Taxpayer there claimed that the sales proceeds should not be regarded as income in 1951 because of the later obligation to repay. It was held that the sale proceeds were income in *142 the year of sale under the claim of right doctrine and payment of the judgment gave rise to a deduction in 1953, the year of repayment. The taxpayer made an equitable appeal in Phillips similar to that which petitioners make here, but the annual accounting concept made it impossible to take such factors into account in determining tax liability for the year of receipt. We accordingly hold that petitioners cannot use payments to be made as transferees for Four B's to reduce capital gains realized when the distributions were received in 1967 and 1968. The final issue is whether petitioners and Four B's are liable for the penalty provided by section 6653(a) for negligence or intentional disregard of rules and regulations with respect to income taxes. [7]
*143 The burden is upon petitioner to prove respondent's determination erroneous. LeRoy Jewelry Co.,36 T.C. 443, 445 (1961). Petitioners contend that they relied heavily and in good faith on their lawyer and accountants in the preparation of tax returns. See, e.g., Conlorez Corp.,51 T.C. 467, 475 (1968); Leo A. Woodbury,49 T.C. 180, 200 (1967). Petitioners cannot avoid their duty to file accurate returns simply by shifting responsibility to their agents, however: "[the] ultimate responsibility for a correct return lies with the taxpayer, who must at least furnish the necessary information to his agent who prepared the return." Herbert Enoch,57 T.C. 781, 802, 803 (1972). In this case petitioners did not furnish the correct information to their agents. When their accountant, Freitag, asked Stevenson what the nature of $3,000 received by Four B's was, Stevenson replied that it must have been a repayment on a loan he owed Four B's, when in fact it was rent from Whitewater to Four B's. The failure of Four B's to report *144 this $3,000 as rental income constituted a failure to report half of its rental income for that taxable year, and rental income was the primary source of its revenue. Similarly, petitioners' original 1967 and 1968 income tax returns failed to report any liquidating distributions received from Four B's. A letter of May 5, 1967, from Freitag, their accountant, to petitioners put them on notice that such distributions were taxable, and we believe petitioners were clearly negligent in signing returns which omitted such substantial sums of income and tax due. Accordingly, respondent's determination that a negligence penalty is applicable is clearly warranted. In addition, petitioners have failed to meet their burden of proof on this point. We accordingly hold that the negligence penalties were properly determined by respondent. Decisions will be entered under Rule 155.
Footnotes
1. The following cases are consolidated herewith: Robert J. Stevenson and Ethel B. Stevenson, docket No. 8436-72; Robert J. Stevenson, docket No. 8437-72.↩
2. Statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
3. Freitag's firm erroneously increased this asset to the amount shown here by $1,878.33, as that firm apparently believed that the distribution of October 5, 1967, in that amount was a loan.↩
4. Cash, $2,159.78; Account receivable--Whitewater, $9,667.00; Note receivable--Whitewater, $54,000.00; Rent--Whitewater, $3,000.00; Hawthorne Mellody [National Industries] stock, $4,876.00.↩
5. Retention of assets after dissolution to provide for payment of corporate debts was expressly allowed under Wisconsin law during the years in issue. Wis. Stat. Secs. 180.765, 180.768↩ (1953).
6. The income tax return of Hotel Seymour, Inc. for the year ended March 31, 1964, showed liabilities of $25,439.85, but the account receivable to Four B's was only $24,736.08.↩
7. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c) (1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩